Stimpson v. Reynolds.

Judgment accordingly.

[ALBANY GENERAL TERM, May 3, 1852. *Harris, Parker* and *Wright*, Justices.]

————— ＊◊＊ ———— ——

STIMPSON *vs.* REYNOLDS, late sheriff, &c.

An officer is not protected in taking, under a writ of replevin, the property of a third person, in no way a party to the replevin suit, although the goods seized are the specific chattels which the writ of replevin directs him to take.

MOTION to set aside report of a referee. The action was trover, commenced in January term, 1847, for 100 barrels of flour, marked " Otsego mills." The cause was referred to Alexander F. Wheeler, Esq, sole referee.

From the evidence in the case it appeared that in the fall of 1846, one Francis Dennison, residing in the state of Michigan, sold to the plaintiff 380 barrels of flour. The flour was manufactured at the Otsego mills in Michigan, and was marked " Otsego mills." The plaintiff paid for the flour in drafts on Troy and money. At the time of the sale, 92 barrels were stored with Williams, Howard & Co. of Buffalo, and 288 barrels were on the Erie canal, shipped on boats of James H. Hooker, an extensive forwarder on the canal between Buffalo and Troy. The flour in store Denison turned out personally to Stimpson, and directed Hooker's agent at Buffalo to give the plaintiff a receipt for the 288 barrels, which was done on the 2d November, 1846; the flour at that time having been shipped on board of Hooker's

Stimpson v. Reynolds.

line.  In the ordinary course of transportation the flour would have reached Troy by the 10th of November.  About the 5th or 6th November, Bigelow & Moore of Troy were advised, per bill of lading, from the plaintiff, that he had shipped 286 barrels of flour to them by the boats Columbus and Charter Oak, of Hooker's line, and 94 barrels by a boat called "The Savery." The shipping bill described the flour as branded "Otsego mills," 116 barrels on board the Columbus, and 170 on the Charter Oak. They got the 94 barrels by the Savery, the 116 barrels by the Columbus, and 70 barrels which came by the Charter Oak. The Charter Oak shipping bill was made out to Dennison, care of J. H. Hooker, Troy, indorsed by Dennison, "Deliver the within flour to the order of William Stimpson," with Stimpson's indorsement, "Deliver the within flour to Bigelow & Moore." On the 11th November, the 170 barrels shipped on the Charter Oak came to Hooker.  As it was directed to Dennison, and he not being known at Troy, 70 barrels of it was put in Hooker's storehouse, and 100 barrels in the store occupied by Hunt & Baker.  On or about the 18th November, the 100 barrels of flour deposited in the store occupied by Hunt & Baker were taken by a deputy of the defendant, under a writ of replevin in which Milo J. Goss and Rufus H. Darling were plaintiffs, and Francis Dennison defendant, the property delivered to Goss, and by him shipped to New-York.  Prior to the execution of the writ, the plaintiffs named therein gave to the defendant, as sheriff, a bond with sureties, conditioned that they would prosecute the suit to effect and without delay, against Dennison, for taking and unjustly detaining 100 barrels of flour marked "Otsego mills," and that if the defendant recovered judgment against them in such action, they would return the same property, if return thereof should be adjudged, and would pay to the defendant all such sums of money as might be recovered against them by the defendant in the action, for any cause whatever.

The flour shipped on the Charter Oak was put in store, without Hooker apprising Bigelow & Moore of the fact; and the 100 barrels were taken by the defendant's deputy, without their knowledge.  About the 1st of December, 1846, and before this

action was brought, Bigelow & Moore, in the name of, and on account of the plaintiff, claimed from the defendant the flour taken. The price of flour on the 9th November, 1846, at Troy, was $5,75 per barrel. At the time of the taking the defendant was sheriff of the county of Rensselaer.

Upon these facts the cause was submitted to the referee, and he reported that the defendant, on the 19th of November, 1846, wrongfully took and converted to his own use one hundred barrels of flour, the property of the plaintiff; and assessed the damage against the defendant which the plaintiff had sustained by occasion of the premises, at $747,05.

*A. B. Olin.* for the plaintiff.

*J. E. Taylor,* for the defendant.

*By the Court,* WRIGHT, J. No other conclusion can be drawn from the evidence than that the property taken belonged to the plaintiff. The flour in the store occupied by Hunt & Baker, was unquestionably parcel of the lot purchased by the plaintiff from Dennison, and shipped to Troy by Hooker's canal boat, the Charter Oak. But if the evidence on the question of property had been conflicting, the referee having found the title in the plaintiff, such finding is conlcusive. The taking, also, by the defendant, is clearly established.

It is, however, now urged that the action was wrongly brought against the sheriff, he not being liable in trover for taking the specific chattels, named in the writ of replevin; that the writ is a protection to the officer, though the title and possession of the property be in a third person in no way a party to the action.

It is remarkable that the books furnish no adjudication on this point, unless it be the case of *Hallet* v. *Byot,* (*Carthew's Rep.* 380.) Chief Justice Bronson, in *Shipman* v. *Clark and others,* (4 *Denio,* 446,) intimates that the process in replevin *may be* a sufficient protection to the officer, though he take the chattels from the possession, and they be the property of one who is a stranger to the writ. This, however, was but a dic-

tum of the chief justice, resting upon the case in *Carthew*, and cautiously put forth, in an action of trespass for replevying chattels, not brought against the officer, but the plaintiffs in the writ. The case only decides that a party who sues out the writ is not protected by it, if he cause the property of a stranger to be replevied.

The ground assumed for holding the process a justification to the officer, is, that unlike an execution which directs the taking *of the property of the defendants*, it does not command him to take the property either of the plaintiff or the defendant, but the *specific chattels* named in the writ; and he cannot demand indemnity, as in case of an execution, but is liable to indictment and a civil action besides, if he refuse to execute the process. That the taking must be intended to be the act of the law, it being done pursuant to the mandate of valid process.

Though not absolutely necessary, I am inclined in this case, to directly meet the question, whether an officer taking the specific chattels which the writ issued on the action of replevin, directs him to take is protected, though he seize the property of a third person in no way a party to the action. It seems to me to be in hostility to general and well settled principles of law relating to the rights of property. The owner of chattels is entitled to the unmolested possession, enjoyment and disposition of them. He who undertakes to exercise control or dominion over them, in hostility to the owner, whether he be an officer or other person, acts at his peril. The law gives the owner the usual remedy by action; or he may retake the goods without process if he can do it peaceably. These are general principles. It is not pretended that the process is a justification to the plaintiff in replevin, or to those who act under his authority, in removing the goods of a person, other than the defendant in the action. All are trespassers, unless indeed the officer who delivers the goods to the plaintiff, is shielded by the writ. On an execution against the goods of A. the officer acts at his peril if he take the goods of B. Should it alter the case, so far as the rights of B. are concerned, that the process directs the officer to take specific chattels, which are the property of B.? The

writ in replevin, it is true, directs the officer to deliver specific chattels, but as the property of the plaintiff in the action. The suit is instituted by the plaintiff to recover the possession of the property instead of the value of it. Can it be, that by adopting replevin as the form of action, instead of trespass or trover, the rights of third persons, so far as any remedy against the action of the officer is concerned, are lost, and he may interpose his process as a shield? It is contended that the officer is bound, without indemnity, (which he may demand in case of an execution,) to execute the writ. Is this so, in a case where the goods named in the writ to be delivered are not in possession of the defendant in the action of replevin, nor of the real owner, and where the real owner has no opportunity of interposing a claim to them under the statute? But the fact of an officer being indemnified in the execution of a *fi. fa.* confers on him no authority that he had not without such indemnity; he may thereby be compelled to do an illegal act in taking the property of a stranger to the execution, but he is nevertheless a trespasser in doing so.

The act in relation to the action of replevin, authorizes the defendant in the action, *or any other person in possession of the goods and chattels* specified in the writ, to give notice of a claim of property therein to the sheriff, and demand a jury to try the title. If the jury find in favor of the claimant, the sheriff shall not deliver the property to the plaintiff in replevin, unless he will indemnify him to his satisfaction, and refund to the claimant the fees of the sheriff and jury in trying the title. These provisions, say this court, in *Spencer* v. *McGowen,* (13 *Wend.* 256,) "are designed rather for the security and benefit of the sheriff, than of the party claiming the property;" but why provide for making the officer secure, if in all cases the process in replevin is a protection to him? Again, says Sutherland, J. "the person claiming title to the property is not prohibited by these provisions from taking any other course to try or enforce his right, which upon general principles he might have done before this act was passed." It is urged that the plaintiff in this case might either have put in a claim of property, or have prosecuted the plaintiffs in the writ of replevin, in trespass or trover. But

could he have put in a claim under the statute? He was neither defendant in the replevin suit, nor was he in possession of the goods, and these are the only persons that by the statute may interpose the claim. But suppose the claim interposed by him, and the jury find in favor of his title, the goods are not to be re-delivered to him. The property is still to be delivered to the plaintiff in the replevin suit, if he will indemnify the officer. Again, it is said he has the remedy to sue the plaintiffs in replevin. But they may be irresponsible. They give no security to him, to pay any damages that he may recover against them. The bond is to the defendant in the replevin suit.

Had it been made to appear (which it was not) that the property described in the writ of replevin was the identical property taken by the sheriff, I think he would not have been shielded or protected by the process, in taking the property of the plaintiff, who was in no way a party to the action.

The motion to set aside the report of the referee must be denied.

