## Foster *vs.* Pettibone.

Trespass cannot be maintained by the owner of goods, against a sheriff, for taking them under and pursuant to a writ of replevin against another person having the goods in possession.  JOHNSON, J., dissented

The law fully recognizes the owner's right, and if he can, without force, obtain the property, will not hold him a wrongdoer for taking it; but it withholds from him an affirmative remedy by action against a ministerial officer; allowing him an action only against other persons concerned in, or who instigated, the taking.

APPEAL by the plaintiff, from a judgment entered at a special term, upon the report of a referee.  The action was trespass for taking a quantity of flour.  The referee nonsuited the plaintiff, on the ground that the defendant having acted in the premises by the command of a writ of replevin, was justified thereby, and was not liable to the plaintiff in this action.  The opinion of the court states all the facts that are material.

*John N. Pomeroy,* for the appellant.  I. An action of trespass can be maintained by the plaintiff against the defendant, for taking the property of the plaintiff upon the writ of replevin, issued in the suit against David S. Baker.  It is a general principle of the law, that the owner of property is protected from intrusions upon it by third persons.  He is entitled to its unmolested possession, enjoyment and disposition, and any one undertaking to exercise control or dominion over it, whether he be an officer, or other person, acts at his own peril.  The law gives the owner of chattels a remedy by action against a trespasser, or he may retake them, peaceably, without process.  These are general and elementary principles, and unless the defendant is protected by other rules of law, he must be answerable to the plaintiff for his trespass.  We will inquire whether he is thus protected.  (1.) The defendant is not protected by the rule that ministerial officers may justify acts done under process regular on its face.  This principle is a familiar one, but it does not apply to the case presented in this action.  The plaintiff in the replevin suit, and all other persons engaged in the taking, except the sheriff, are confessedly liable in an action of trespass, to the

owner of the goods. (*Shipman* v. *Clark,* 4 *Denio,* 446.) It is a common principle that the sheriff is liable to the owner of goods taken under execution, regular on its face, issued in an action against a third person, directing the officer to take the chattels of such defendant. There can be no true distinction made between the case of a sheriff taking a stranger's goods under an execution and under a writ of replevin. This distinction has been raised, and relied on, and is the gist of all reasoning against the liability of the sheriff. In the case of *Shipman* v. *Clark,* (4 *Denio,* 446,) Bronson, J,, very cautiously says, " But in replevin, when the command of the writ is to replevy and deliver certain specified chattels, the process *may be* a sufficient protection to the officer, though he take the chattels from the possession and they be the property of one who is a stranger to the writ," and cites *Hallet* v. *Byrt,* (*Carthew,* 380.) These cases are all that can be found in the reports upon this point. It is only necessary to say of these opinions that they are entirely obiter. Judge Bronson's dictum was only intended to be obiter, and is placed by the reporter under a semble. The case in Carthew called for no such line of observation as the judge adopted, and he argued entirely upon a hypothetical state of facts. The case involved two questions, (1.) whether the plea gave color, and (2.) whether the custom pleaded was legal, and both were negatived. These cases then have no binding authority as precedents. But we deny upon general principles, that the distinction they attempted to raise is a sound one. An execution directs the sheriff to levy upon and sell the goods and chattels which are *the property of the defendants.* It does not specify any particular goods and chattels, but the force of the writ is the same as though a general inventory should be incorporated into it, purporting to give a schedule of the goods which were the property of the defendant. The case states that the writ of replevin, " directed the defendant in this action [the sheriff,] to take the said goods and chattels as the property of the said John G. Brown," who was made plaintiff in the replevin suit. Now, unlike the writ of execution, which is against all the property generally of a defendant, the writ of replevin

limits the sheriff to take *particular goods as the property of the plaintiff in the replevin suit.* The goods to be replevied are inventoried or specified, but still have upon them the limitation of being the property of the plaintiff in the replevin suit, and the sheriff is bound by two restrictions, viz : he must take only the goods pointed out, and those goods must be the property of the person suing out the writ of replevin. Under an execution the goods are not specified ; the sheriff has, as it were, a general inventory to choose from, but he is also under the limitation of the goods being the property of a particular person, viz : of the defendant in the execution. If a sheriff in executing a writ of execution, seizes goods which are the property of a stranger, he oversteps the limits of his authority, and invades the rights of that third party. If the sheriff, in executing the writ of replevin, seizes either any goods not specified, or any of the goods which are specified, and which are the property of a stranger, he also oversteps the limits of his authority, and invades the rights of that third party. It is conceded that the sheriff is liable in the former case, and we are able to see no distinction between the two, to relieve him from liability in the latter.

II. The sheriff is not protected by the provisions of the statute directing replevins, if he seizes the property of a stranger to the replevin suit. The referee, in deciding the motion for a nonsuit, relied entirely upon the statute, and it may be well to examine its provisions. The revised statutes, tit. 12, ch. 8, part 3, relate to replevins. The first seven sections regulate the commencement of suit, the 8th directs the sheriff to execute the writ, the 13th to 17th relate to conflicting claims of property. The 13th section provides, that " If the defendant, or any other person, who may be in possession of the goods and chattels specified in the writ, shall claim property therein, or in any part thereof," they may procure a jury to be summoned by the sheriff, to try the claim. The 14th and 15th sections relate to proceedings before the jury. By the 16th the sheriff is directed to deliver the goods to the plaintiff in the replevin, if the jury shall find that the property is not in the claimant, and by the 17th

Foster *v.* Pettibone.

the sheriff "shall not deliver the same unless the plaintiff shall indemnify the sheriff," when the jury shall find that the property is in the claimant. These are all the provisions in regard to conflicting claims. (1.) Under these sections the present plaintiff was not empowered to interfere and claim the property seized by the sheriff. The referee says in his opinion, that "it was clearly competent for the defendant in the replevin, or the plaintiff in this action to have interposed his claim to the property;" and "It is difficult to see how he [the sheriff] can be made liable in case where no claim whatever has been interposed, where he has no indemnity, and no right to exact any." The error into which the referee fell, was in assuming that the plaintiff could interpose his claim of property. The statute nowhere authorizes him to do so. That privilege is given to the defendant in the replevin suit, and to any other person who may be in possession of the chattels specified in the writ. The whole tenor of the statute shows that the possession intended is an actual possession. In this case the owner of the property was neither the defendant in the replevin suit, nor was he in possession of the property, and the statute makes no provision for him. In the case of *Stimpson* v. *Reynolds*, (14 *Barb.* 510,) a case very similar to the present one, Judge Wright, in giving the opinion of the court, says, "It is argued that the plaintiff in this case might have put in a claim of property, or have prosecuted the plaintiff in the writ of replevin, in trespass or trover. But could he have put in a claim under the statute? He was neither a defendant in the replevin suit, nor was he in possession of the goods, and these are the only persons that by the statute may interpose the claim." The code has altered the law in regard to the claims of third persons in replevins, and has largely extended the right to interpose the claim. (*Code,* § 216.) (2.) But if the plaintiff was empowered to interpose his claim to the property, and to demand a sheriff's jury to try the title to the property, his neglect to do so does not prevent him from resorting to any other legal remedy. (3.) The sheriff is not bound to execute the writ absolutely, and without remedy or protection. The referee in his opinion assumes and proceeds entirely upon the

idea that the sheriff can require no indemnity, and must abso-
lutely take possession of the goods as directed by the writ, and
that he cannot be liable for acts which the statute directed him
to do, without any opportunity of his procuring security for him-
self.   The sheriff is nowhere bound to seize the goods if he has
reason to suppose that they are the property of another.   He
may in all cases protect himself by calling a sheriff's jury to
try the title of property against which process is issued.   We
esteem this to be a common law right of sheriffs, and at all
events it is their practice.   But are not sheriffs protected by
the bonds they were required to take under the provisions of
the revised statutes?   Such bonds were executed to the sheriff,
with securities to be approved by him, and conditioned that the
plaintiff would prosecute the suit to effect without delay, and
would return the property, if return thereof was adjudged, and
would pay to the defendant such sums of money as should be
recovered against him for any cause whatever.   It seems to us
that the provisions of this bond enure to the benefit of the sheriff,
and that he is protected, or can protect himself under it.   This
defendant cannot complain that he is bound without any remedy
or security to execute this writ, and that he should not be liable
for his trespasses done in obeying the statute, for we have seen
that he may protect himself by a jury, and that he always takes
a bond, by virtue of which he may indemnify himself for his acts.
(4.) If this plaintiff cannot maintain this action he is remediless.
That the plaintiff's rights have been invaded, there can be no
question, and the law will certainly give him a relief.   The
plaintiff was not made a party in the original replevin suit, and
had no power to appear in it.   He had no right under the stat-
ute to appear before the sheriff and interfere—the goods were
not in his possession—they were seized in a proceeding to which
he was a stranger, and of which he was entirely ignorant, and it
is a mockery to say that he cannot claim reparation from the
parties doing the wrong.   The person suing out the replevin
writ may be entirely irresponsible, and if the rule claimed on
the part of the defendant be the true one, the plaintiff must lose
his property.

Foster *v.* Pettibone.

III. This plaintiff might have peaceably retaken the flour replevied, while in the hands of the sheriff or of the plaintiff to whom the sheriff had delivered it, without process, and he may enforce the same right, if need be, by action. It is, without question, true that an action confers no new rights upon a party ; it is only a method of enforcing through the means of a court, rights which before existed. And it is also true, as a general rule, that when a party has a right he shall have the power to enforce it. It can hardly, then, be denied, that if the party plaintiff could retake the replevied goods peaceably from the possession of the sheriff, he can also have an action of trespass against the sheriff for taking the same goods. The action does not increase or add to the plaintiff's right to the goods : it is only a means of vindicating or enforcing that right, and the right to the action logically follows the right to the property. If the plaintiff may retake the goods from the sheriff's hands, it is because that officer has no lawful claim upon them, and no power to keep them, and therefore is a trespasser from the beginning in taking them, and if a trespasser, then liable to this action for trespass. It would be absurd and self-contradictory to allow the right to the plaintiff to retake the goods, and deny him the privilege of bringing an action for the original seizure. Can the owner then retake the property peaceably from the hands of the sheriff without process ? We answer that he can, and for the following reasons : (1.) Upon the general principles of the rights accruing to the ownership of property, when that ownership has been violated. (2.) The objection that the writ of replevin is issued upon proof made, as to the property, and in a quasi judicial proceeding, can have no foundation upon the general principles of law, for the real owner was not at all a party to this proceeding, and is not, then, in the least concluded or affected by this proceeding, and would not be, even were it a solemn judgment of a court. This is one of the most elementary principles of law. (3.) The statute forbidding counter replevins, which is but declaratory of the common law, is only intended to prevent the defendant in the replevin suit from resorting to the same process, when he can have all matters

adjusted in the original suit, and does not affect the rights of third parties, strangers to the suit, who may be owners of the property. (4.) The rights of the sheriff are no more than those of the plaintiff in the replevin suit, and the owner of the goods would have the same claim against the goods in the hands of either. In the case of *Spencer* v. *McGowan*, (13 *Wend.* 256,) it is decided that the owner of personal property, left in the possession of a third person, may, by his own act, repossess himself of such property, although it be taken from the possession of such third person by virtue of a writ of replevin. This case virtually decides the right of the owner of replevied property to retake it, in whosoever hands it may be, if he can do it peaceably, and if he may do this, his right to an action is clear.

IV. The only case in point upon this question, in the English or American reports, maintains the rights of this plaintiff against the sheriff in their fullest extent. The cases already cited from Carthew and Denio are all that we have been able to find, after very careful search, with the exception of the case lately decided of *Stimpson* v. *Reynolds*, (14 *Barb.* 506.) In this case, flour, which was the property of the plaintiff, had been taken by the sheriff under a writ of replevin, issued in a suit in which third parties were plaintiffs, and the warehouse keeper, in which the flour was stored, was defendant. The owner brought trover against the sheriff. A referee decided in favor of the owner, against the sheriff, and the defendant appealed to the general term, Wright, Harris and Parker, Js. Mr. Justice Wright delivered the opinion of the court, affirming the judgment, and he assumed that the case involved just the question presented by this action, and discussed that question, and decided that question. The broad doctrine was laid down that the sheriff was liable in an action by the owner of the property taken under a writ of replevin issued in the suit of a third person. This case controls and governs the decision of the present question, and has no decision opposed to it, and unless this court expressly overrules it, they must reverse the judgment below, and order a new trial.

Foster *v.* Pettibone.

*Geo. Rathbun,* for the respondent. The act for which the defendant was sued in this case, was: (1.) An official act as sheriff. (2.) It was done in obedience to the positive directions and requirements of the statute. (3.) The law left to the defendant no option, or discretion, in any respect. (4.) He was compelled by law not only to do the act complained of, but to do it precisely as he did. He is, therefore, protected by his office and writ, as held by the referee. The non suit was right. (*Shipman* v. *Clark,* 4 *Denio,* 446. *Hallet* v. *Byrt, Carthew,* 380. *Savacool* v. *Boughton,* 5 *Wend.* 170. 2 *R. S.* 523, § 6, &c.) The case of *Stimpson* v. *Reynolds,* (14 *Barb.* 506,) was a mere dictum. The case turned upon the point that it was not proved that the sheriff took the identical property described in the writ. It could not, therefore, protect him. The opinion of Mr. Justice Wright, is his individual opinion, and not the judgment of the court.

T. R. STRONG, J. This is an action of trespass, commenced before the code, for the taking by the defendant, of a quantity of flour, the property of the plaintiff. The defendant, at the time of the taking, was sheriff of the county of Cayuga, and took the flour from the possession of one Baker, under and by virtue of a writ of replevin, issued in a suit in favor of one Brown against Baker, directed to him, and requiring him to take the property. The writ is not set forth in the case, but it is stated that it required the defendant to take the flour, "as the property of the said John G. Brown." I understand from this statement of the writ, not that the command was in those words, but that the writ recited, in the ordinary form, a complaint by the plaintiff therein, of the taking of his flour, describing it, and then commanded the sheriff, if security should be given &c., to cause the same flour to be replevied. (2 *R. S.* 523, § 6. *Yates' Pl.* 539.) It is not material, however, in which of these forms the requirement to take the property was, as there is not, in my opinion, any substantial difference between them. The question in the case to be decided is, whether the present defendant is liable as a trespasser, to the present plaintiff,

the owner of the flour, for taking it as sheriff in obedience to the writ; or in other words whether trespass can be maintained by the owner of goods against a sheriff, for taking them under and pursuant to a writ of replevin against another person having the goods in possession.

In *Hallett* v. *Byrt*, (*Carthew*, 380,) which was an action of trespass for taking three cows, the defendant pleaded specially, setting up a justification under a precept in replevin. The plaintiff demurred, assigning for cause, that the plea amounted to the general issue, and the demurrer was sustained for the reason stated, and also because a prescription relied upon in the plea as authorizing the process of replevin was void. In respect to the first cause, Holt, Ch. J., said, " If the defendants had admitted a bare possession &c., that would have been a sufficient color for the defendants to justify specially under the precept for replevin, because the cows were especially mentioned in the precept, and they were commanded to take them, and therefore they might justify the taking &c., although the property was not in that person who brought the replevin. And no action of trespass will lie against the defendants (the officers) for taking goods or chattels, by virtue of a replevin, unless he who hath possession claims a property when the officers come to demand them, and they take them notwithstanding such claim of property, and this special matter must come in by way of replication by the plaintiffs. And so there is a difference between a replevin and other process of law, with respect to the officers, for in the first case, viz : in the replevin, they are expressly commanded to take that in specie, but in writs of execution the words are general, viz : to levy of the goods of the party, and therefore it is at their peril if they take another man's goods, for in that case an action of trespass will lie." In *Shipman* v. *Clark*, (4 *Denio*, 446,) which was an action of trespass for taking timber &c., the defense at the trial was, that the timber was taken under a writ of replevin in favor of Clark against one Scott, and delivered by the sheriff to Clark, &c. who drew it away. Bronson, Ch. J., says : " On an execution against the goods of A. the officer acts at his peril if he

Foster *v.* Pettibone.

takes the goods of B. But in replevin, where the command of the writ is to replevy and deliver certain specified chattels, the process may be a sufficient protection to the officer, though he take the chattels from the possession, and they be the property of one who is a stranger to the writ. (*Hallett* v. *Byrt, Carthew*, 380.) But in such a case, the process can be no justification to the plaintiff in the replevin, or to those who act under his authority, in removing the goods. It would be strange indeed, if a man could sue out a writ against A. and take the goods of B. with impunity. The person whose goods are taken is not confined to a claim of property before the sheriff, but may have the usual remedy by action, or retake the goods without process if he can do it peaceably. (*Spencer* v. *McGowan*, 13 *Wend.* 256.) In *Stimpson* v. *Reynolds*, (14 *Barb.* 506,) which was an action of trover for flour, and the defense was that it was taken by the defendant as sheriff, under a writ of replevin, the court refused to set aside a report of a referee in favor of the plaintiff, on the ground that it did not appear that the property taken was the identical property described in the writ, and also expressed the opinion after a brief discussion of the point, that if it had been made to appear, the defendant would not " have been shielded or protected by the process in taking the property of the plaintiff, who was in no way a party to the action."

No other case has been cited by the counsel, or has come to my notice, in which the question now presented has arisen. The counsel for the plaintiff, in his elaborate and learned printed argument, and Justice Wright in *Stimpson* v. *Reynolds*, say there is no other case on the point, in the books. It will be observed, that it was not necessary to pass upon the question in either of the cases referred to. The question is therefore entirely open, in respect to authority.

It is a consideration entitled to no small weight against the right of action, that often as property has been seized under a writ of replevin issued therefor which belonged to, or was claimed by, some other person than the parties, no case can be found in which a recovery against the officer who served the

writ, as a wrongdoer, has been permitted. The fact is a striking testimony to the prevalence of an opinion among the profession, ever since the action of replevin has existed, that no liability is incurred by the officer by acts done by him in obedience to the process.

There would be a flagrant inconsistency, in holding that an officer of the law may be liable in tort, for taking property which by law he was commanded to take, when he kept strictly within the limits of his process, in compelling the commission of a wrong and enforcing a responsibility for it; but I do not see why this doctrine would not be involved in the maintenance of the action. The property taken was specified in the writ; the writ contained a command to take it, which was absolute and unqualified; no direction was given to the sheriff to inquire into the right of property before seizure; no means are provided by the statute for such an inquiry, except on a claim of property being interposed; and I know of no authority for such a proceeding in any other case. The proceedings in the action of replevin, are almost wholly regulated by statute, and if such an authority in the sheriff had been contemplated by the legislature, some reference would have been made to it, in the form prescribed for the writ, or in some provision for the exercise of the authority. Not only is there no such provision, but the statute in terms commands the sheriff, upon the receipt of the writ with the affidavits and bond, to "forthwith proceed to execute the writ, by delivering possession of the property named therein to the plaintiff," &c. There is no force in the position that the command in the writ is limited to the property of the plaintiff therein, by the direction to take it as his property. An affidavit of property was required, to authorize the writ, and the plaintiff had by compliance with the law, entitled himself to have the specific property, before the officer of the law was called upon to execute the process. The sheriff was to take the goods as the property of the plaintiff; whether they were in fact the plaintiff's, or not, he was not to inquire. That question had been determined, so far as the issuing and execution of the writ was concerned.

It is a familiar principle, sustained by numerous authorities,

Foster *v.* Pettibone.

that process from a court or officer having jurisdiction to issue such process, which is regular on its face, is a perfect protection to a ministerial officer, for acts done in obedience to it. (*Savacool* v. *Boughton*, 5 *Wend.* 170. *Sheldon* v. *Van Buskirk*, 2 *Comstock*, 473, 477.) This principle appears to be decisive of the question under consideration. Viewing the mandate of the writ as imperative and unconditional, the strongest considerations upon which the principle referred to, of protection to ministerial officers, can rest in any case, exist and require protection to the defendant in this. It would be intolerable to require the sheriff to act, and hold him responsible for his action, to a third person who might prove to be the owner of the property. But whether the sheriff might or not, inquire into the title to the property of the plaintiff in the writ of replevin, and justify himself for declining to execute the writ, by showing that the plaintiff was not the owner, he was not bound to take that burthen and responsibility upon himself, but might obey the writ and rely upon that for his protection.

The distinction, in reference to the principle referred to, between an execution which goes against the property generally of the defendant, without specifying any particular property, and a writ of replevin, which describes the property, is stated in the case in *Carthew*, and is very obvious. In the case of an execution, the sheriff must see to it that he takes only the property of the defendant; his authority is limited to that; but in the case of a writ of replevin, the property to be taken is distinctly pointed out.

It is urged on the part of the plaintiff, and it constitutes the chief argument of the learned justice who delivered the opinion in the case of *Stimpson* v. *Reynolds*, in support of the liability of the sheriff, that a contrary doctrine would be in hostility to general principles in respect to the right of property and remedies for its infringement. But as much so, in every case where the party at whose instance process is issued is not protected, is the rule making the process a protection to the officer executing it. Take the case of an attachment issued by a jus-

tice of the peace without the preliminary proof to confer juris-
diction ; an execution without any judgment; and similar cases;
the party who procured the process is a trespasser, but no rem-
edy is allowed against the officer who served it.  The argu-
ment is of as much force in the cases supposed, as in the
present and like cases.  That in the former the injured party
is a defendant in the process, and in the latter not, makes no
difference ; a trespass has been committed on the rights of each,
and on general principles one is entitled to the same remedy
as the other.  The right and propriety of extending protection
to the officer is the same in each.  Injustice may sometimes
result to individuals from shielding the officer, as where the
party obtaining the writ is pecuniarily irresponsible, but on the
whole, justice is best promoted by granting the protection.

The entire absence of any provision in the statute for an in-
demnity to the sheriff for the taking of the property, confirms
the position that no liability is thereby incurred by him.  Am-
ple security for the benefit of the party is provided for, by
requiring a bond to the sheriff to prosecute the suit to effect,
and for a return of the property, if the defendant recover, and
a return be adjudged, and for the payment of all such sums of
money as the defendant may recover; but none is required for
the benefit of the sheriff.  (2 *R. S.* 523 § 26, 527, § 32.)

When a claim of property in the goods is made by a defend-
ant, or any other person who may be in possession, and the jury
to be called thereupon by the sheriff sustains the claim, the
sheriff must not deliver the property to the plaintiff, unless the
plaintiff " shall indemnify the sheriff to his satisfaction for de-
livering the property," &c., not taking it.  (2 *R. S.* 525, §§ 13
*to* 17.)  In *Spencer* v. *McGowan*, (13 *Wend.* 256,) it is said
by Sutherland, J., ".These provisions are designed rather for
the security and benefit of the sheriff, than of the party claim-
ing the property ; for although the jury may find in favor of the
title of the claimant, the sheriff may still, and perhaps must,
deliver the property to the plaintiff in replevin, if he will indem-
nify him.  The person claiming title to the property is not pro-

Foster *v.* Pettibone.

hibited by these provisions, from taking any other course to try or enforce his right, which upon general principles he might have done before this act was passed." The learned justice, in *Stimpson* v. *Reynolds*, after referring to the sections of the statute last cited, and those remarks upon them, inquires, "Why provide for making the officer secure, if in all cases the process in replevin is a protection to him?" I admit, that from this portion of the statute, thus construed, no inference may be drawn that the legislature contemplated the sheriff might be liable for delivering the goods to the plaintiff after a claim of title was interposed; but if they did that would not be sufficient to create a liability if none in fact existed. I do not however think it clear that the construction referred to is correct. An indemnity is to be given, although the person who claims property in the goods is the defendant. What liability to the defendant would be incurred for which the sheriff would need indemnity? Those provisions may have been designed, like that for security in the first instance, for the benefit of the defendant—to afford him further security—and if so the statute is consistent. It is not denied that these provisions do not affect the right of the owner to pursue any other remedy to which he is entitled on general principles independent of them, but on general principles the officer is protected by his process valid on its face.

The present case does not call for the decision of any question as to the liability of a sheriff for delivering goods after a claim of property is made, as in this case there was no such claim.

It is supposed by the counsel for the plaintiff, that because the owner of the property might have retaken it from the sheriff, if he could do so peaceably, he might enforce his right to it by action against the sheriff. But this is a mistake. This position is fully answered in *Spencer* v. *McGowen*, before cited. The law fully recognizes the owner's right, and if he can, without force, obtain the property, will not hold him a wrongdoer for taking it; but it withholds from him an affirmative remedy by action against a ministerial officer, allowing him

an action only against other persons concerned in, or who instigated the taking.   The judgment must be affirmed.

SELDEN, J., concurred.

JOHNSON, J., dissented.

Judgment affirmed.

[MONROE GENERAL TERM, September 3, 1855.   *Selden, Johnson* and *T. R. Strong*, Justices.]