MANNING, BOWMAN & COMPANY, Respondents, v.
PATRICK H. KEENAN and others, Appellants.

*Code, § 216 — notice of, claim under — Liability of sheriff, for delivery of property
held under replevin, after service of notice of claim — Coroner — service upon per-
son in charge of his office.*

Where, while personal property seized by a coroner in an action to recover the
possession thereof from the sheriff, who had held it under an execution, was still
in the coroner's possession, a notice of claim thereto by a third person, together
with the affidavit required by section 216 of the Code, was served upon the
coroner, and he thereafter, upon receiving a bond of indemnity, delivered the
same to the party at whose instance it was seized by him, *held*, that he thereby
rendered himself liable to an action for the conversion thereof by the party
serving the notice of claim.

*Foster* v. *Pettibone* (20 Barb., 350); *King* v. *Oder* (4 Duer, 431); and *Bullis* v. *Mont-
gomery* (50 N. Y., 352) distinguished.

Where coroners provide an office and have there a person to whom is intrusted
the entire charge of the office business, and of the service of process, a deliv-
ery to him of a notice of claim to personal property, and of the affidavit required
by section 216 of the Code, is legally a delivery thereof to them.

Appeal from a judgment in favor of the plaintiff, a manufactur-
ing corporation, entered upon the verdict of a jury, and from an
order denying defendants' motion for a new trial.

The action was brought against the defendants, coroners of the
city of New York, to recover the value of certain cases of silverware.
The property had been seized by the sheriff under an execution
against one Olney. While it was in his hands one Hodges com-
menced an action of replevin to recover the same, in which the
property was taken by the defendants. While the property was
still in their hands the plaintiff served upon them the notice of
claim and affidavit required by section 216 of the Code, and
demanded that the goods be delivered to it. The defendants
took a bond of indemnity against this claim from the plaintiff in
the action of replevin, and subsequently delivered the goods to
him, whereupon which this action was commenced.

*A. J. Vanderpoel* and *Robert S. Green*, for the appellants. The
defendants were rightfully in possession of the goods, having taken

them by virtue of claim and delivery proceedings from the possesssion of the sheriff. Before the Code, trespass could not be maintained by the owner of goods against the sheriff, for taking them under and pursuant to a writ of replevin against another person having the goods in possession. (*Foster* v. *Pettibone*, 20 Barb., 350; *Shipman* v. *Clark*, 4 Den., 445; *Willard* v. *Kimball*, 10 Allen, 211.) No change has been made by the Code which confers a right of action on the party not previously enjoyed. (*Schofield* v. *Whitelegge*, 49 N. Y., 259.) Section 216 of the Code does not in terms give any right of action to the third party. Under it he acquires no right to have a delivery of the property to him. (*Haskins* v. *Kelly*, 1 Rob., 160; *Reid* v. *Kelly* [Com. Pleas], not reported.)

*Addison Brown*, for the respondent.

DANIELS, J.:

This action was brought by the plaintiff, a manufacturing corporation, against the defendants as coroners, to recover the value of property taken by them from the sheriff, under proceedings for its claim and delivery. He had levied upon it as the property of Olney, the purchaser from the plaintiff, under an execution issued upon a judgment recovered by the Woodward Steam Pump Manufacturing Company. The proceedings under which the defendants took the property from the sheriff, were taken in an action prosecuted by Hodges, as a purchaser under and from Olney.

Evidence was given tending to show that the property was claimed by the plaintiff pursuant to the provisions of the Code of Procedure, while it was in the possession of the defendants, under the proceedings for its claim and delivery; but that was objected to as defective, for two reasons: First, that the original affidavit was not served; and, secondly, if the evidence showed such a service, it should have been made personally upon the defendants, and not as it was, upon their clerk in their office. It appeared that an affidavit in support of the plaintiff's claim as owner was in fact made, and that it was copied and service of it directed. But in the admission given by the defendants' clerk, it was stated that a copy of the copy affidavit on which the admission was indorsed,

had been served.  This was probably a mere informality.  It did not appear that more than one copy was made, and as the admission was indorsed upon that, the original must have been the one received by the defendants' clerk.  The evidence was clearly sufficient to require the submission of the point to the jury, as it was done by the court; and they must have found, as they very well could from the evidence upon this subject, that it was the original that was served, because they were directed that its service was essential to a right to recover on the part of the plaintiff. The claim and affidavit were delivered to the person having, as he stated, the entire charge of the office business of the coroners.  He kept their books, and attended to the service of process against the sheriff.  He took entire charge of the office business and the service of process, and that continued during the full term of the defendants as coroners.  An office was provided, and this person was placed by them in charge of its business.  It must have been intended by them that it should be understood from those acts, that all papers officially for them should be delivered there, to the person placed by them in charge of their office.  He represented them in all their official business, and transacted it for them under their authority.  For that reason the delivery of the claim and affidavit there to him, was legally a delivery of it to them.  It is manifest that such would have been the final result, even if they had been served personally with the papers.  They would in the end have been returned there to him for his action, as their authorized subordinate.

The delivery was also within the spirit of the provision declaring that all process in suits to which the sheriff is a party shall be delivered to the coroner, in the same manner in all respects as are prescribed by law in respect to sheriffs.  (3 R. S. [5th ed.], 741, § 109.)  And that, in case of the sheriff, could be done by leaving the papers at his office.  (Id. 476, § 45.)  As the action was against the sheriff, the defendants, as coroners, possessed the same authority over its proceedings as the sheriff has in ordinary cases.  The intention of the law was to assimilate their powers to that extent, and to promote that end it was provided by the Code that all its provisions relating to sheriffs should apply to coroners, when the sheriff is a party.  (§ 419.)

Besides that the object designed was accomplished by the papers delivered, and the service made of them. That was to enable the defendants to protect themselves, by a proper undertaking against the claim made to the property by the plaintiff. And the evidence of their subordinate shows that such an undertaking was procured, in consequence of the claim made. It is entirely clear that these objections can be of no service in this case to the defendants. They have hardly a colorable foundation to rest upon.

It has been also objected that the proceedings in which the defendants took and delivered the property, constituted a legal defense to the action for their conversion by the plaintiff. And several authorities have been cited and relied upon as supporting that conclusion. But they were neither of them actions in which the officer was prosecuted by the claimant in whose behalf a claim of title had been served, sustained by the affidavit provided for by the Code in that class of cases. These authorities hold that the proceedings provided for the claim and delivery will protect the officer against an action in favor of a third person, so far as he may act conformably to the direction which it is provided may be given him. (*Foster* v. *Pettibone*, 20 Barb., 350 ; *King* v. *Orser*, 4 Duer, 431.) And to that extent they have been sustained by the Court of Appeals. (*Bullis* v. *Montgomery*, 50 N. Y., 352.) But if the officer exceeds the authority conferred upon him by such proceedings, and takes the property claimed out of the possession of any other person than the defendant or some other person holding it for him, they will fail to protect him against an action by another asserting a paramount title to it. The cases of *Haskins* v. *Kelly* (1 Robertson, 160) and *Stimpson* v. *Reynolds* (14 Barb., 506) went farther, and held that the proceedings formed no protection to the officer against an action in any case. But that doctrine has been substantially overruled by the other authorities referred to, the last of which was a decision by the Court of Appeals, and consequently controlling upon this subject.

In the present case it has not been claimed that the defendants did not take the property from the possesion of the sheriff under the proceedings instituted for that purpose. But it is insisted that a right to prosecute the defendants for the property has been given by the Code of Procedure where, as in this case, a claim of title to

the property, supported by affidavit, has been served upon the officers while they held possession of it. That has provided when the property taken shall be claimed by any other person than the defendant or his agent, that such person may make an affidavit of his title and right of possession, stating the grounds of such right and title, and serve it upon the sheriff, who shall thereupon be not bound to keep the property or deliver it to the plaintiff in the action, unless he shall, on demand, indemnify the sheriff against the claim made, by an undertaking executed by two sureties, accompanied by their affidavits that they are worth double the value of the property as specified in the affidavit of the plaintiff. And it has been further provided that no claim to the property by any other person than the defendant, or his agent, shall be valid against the sheriff unless made in that manner, and a reasonable time after that has been afforded him to demand such indemnity. (Code, § 216.) The enactment of this section proceeded upon the assumption, that the sheriff would be liable for the property on the service of the claim provided for, after obtaining the indemnity mentioned. There could be no necessity for such indemnity unless such a liability was intended to be created. It would be idle to provide him with the means of indemnity against the claim made if he would not become liable to the person making it, by the subsequent delivery of the property to the plaintiff, on whose behalf he had taken it. The condition of the undertaking he is to receive is solely adapted to his protection against just that nature of liability. It is solely to protect him against such claim, which would be clearly needless if it were not designed that the sheriff might become liable to an action for the property to the person making the claim, after he received the undertaking and delivered over the property to the plaintiff. The scope and object of the provision were to place the claimant in a position where he could sue the sheriff for the property, and, at the same time, secure indemnity to the latter against his liability to such an action. By the delivery of the property in hostility to the rights of the plaintiff after the claim was made, supported by the affidavit, and the undertaking was obtained, the defendants became liable to the present action, for this section was applicable to their conduct the

same as it would have been, by its terms, if it had been the sheriff who acted in the case. (Code, § 419.)

The plaintiff was a corporation formed under the laws of Connecticut, and engaged in business in that State as a manufacturer of silver-plated and hollow ware. Its agent in the city of New York was Andrew Losee, and through him Olney ordered the property in controversy. When it was ready for delivery, Losee accompanied it to Olney's store, in order to receive the purchase-price. But the property was not received, nor the price paid, because of the absence of Olney. It was left at his store, however, without any formal delivery or receipt of it, until he should appear and pay the price. That was not done on account of his inability to procure the money. And it was finally arranged that Olney should hold the property for the account of the plaintiff, deliver his notes for the price, and secure their payment by a mortgage on satisfactory real estate. A failure to give the security, it was agreed should vitiate and annul the agreement. The mortgage was not given, and the consequence stipulated by the agreement necessarily followed. It terminated Olney's right to hold the property, and left the plaintiff at liberty to resume possession for the non-payment of the purchase-price, which was to have been received at the time the property was taken to his store. He, however, continued to retain the property until he closed his store, and he then put it in store in the city of New York. That occurred soon after his default, in failing to deliver the mortgage. The closing of the store and the storage of the property became known to Losee, and on behalf of the plaintiff, with the assent of Olney, he obtained it and took it to his own store on John street, where it was to be retained until Olney opened another store and paid the purchase-price. This arrangement was commuicated by Olney to Manning, who was one of the corporators and the plaintiff's managing agent. The statement made was that the goods were taken back to Losee's store, and would be there in the plaintiff's possession as security for the payment of the debt, and that when he took them away he would have the money. There was no objection made to this arrangement, and for that reason it may be assumed to have been practically assented to by the plaintiff's managing agent. By it Losee was to hold the property for the plaintiff until Olney should

pay for it and take it away; and no authority whatever was given to Losee to change it; neither did he have any such authority by virtue of his employment, which was only that of an agent to sell goods for the plaintiff. But about a month after the property was placed in the store of Losee, Olney applied to him for a receipt for the avowed purpose of procuring an insurance upon it, and Losee, in compliance with the request, in his own name, executed and delivered a receipt, stating that he had received the property in store at the rate of fifty cents a case, for the eight cases, per month. Added to the receipt was a statement of the valuation, at the sum of $2,000, with the marks and numbers of the cases. Instead of procuring an insurance upon the property, Olney transferred the receipt to Hodges for the sum of $500, and a stipulation, the terms of which he failed to state, for some further payment, which Hodges finally declined to make because it had been consumed in the expenses of legal proceedings. The court was requested to charge the jury that, if Losee were authorized to give the receipt, and Hodges was a purchaser of it in good faith for value, their verdict should be for the defendants. That proposition was charged, but the court declined to hold that Losee had that authority, and to that the defendants who had taken the property for Hodges as plaintiff in the action against the sheriff, and placed their defense upon his right to it, took an exception, and that is now relied upon as a reason why the judgment should be reversed. But as the employment of Losee by the plaintiff was limited to the sale of its property, and orders contemplating sales, and by the receipt of that which is in controversy he was merely to hold it for the benefit of the plaintiff until Olney paid for and removed it, he had no power so far to change his relation to it as to become a simple bailee of it, as the receipt signed by him imported him to be, for the benefit of Olney. That change was neither within nor incident to the authority which was given, and for that reason it could not be attended with the effect of depriving the plaintiff of its title and transferring it to Hodges as the purchaser of the receipt. It was no part of the power to sell, nor of that afterward created, which was that of a simple custodian until the purchase-price of the property should be paid. To bind the principal, the act of the agent must be within the real or apparent authority of the agent.

(1 Parsons on Contracts [6th ed.], 44–46; *Weisser* v. *Denison*, 6 Seld., 69.)

The deficiency in the authority of the agent has not been avoided by any thing contained in the act to prevent the issuing of false receipts by warehousemen and other persons. (Chap. 326, Laws of 1858.) The object of that act was to prevent persons from issuing false receipts, stating that the property mentioned in them was held in store, when that was not the fact. It was no part of its purpose to empower one person to make an unauthorized disposition of the property of another, merely from the circumstance that he happened at the time to be its custodian. But its object was to declare the effect of receipts properly as well as lawfully issued, and to restrain their creation and use to that class of cases.

No ratification of the act of Losee, in giving the receipt, appeared in the case. It was not shown that the plaintiff, or its managing agent, or either of its officers, was made aware of its existence until this action was brought to recover the value of the property from the defendants. And that has ever since proceeded upon the disaffirmance of Olney's right to the property, without payment of the purchase-price.

There was evidence in the case tending to show that Hodges was not a purchaser of the receipt in good faith. It appeared that he purchased it without any inspection or examination of the property mentioned in it; that it had no relation to any business in which he was engaged, and the price paid for it was but a quarter of what was stated to have been its value. (*Huff* v. *Wagner*, 63 Barb., 215, 235, 236.) It cannot, however, be necessary to pursue this subject, inasmuch as he acquired no title because the receipt was issued without authority by the person executing it. Evidence was given showing what had transpired between Olney and the persons representing the plaintiff concerning this property, which was objected to by the defendants. But it was important to show that, for the purpose of exhibiting the nature and effect of the transactions it related to. They could not well have been properly proven in any other way. The evidence was received to show what had taken place, and from that the jury was warranted in concluding that the plaintiff never had parted with its title to the property.

Olney prosecuted an action against the plaintiff to secure a sur-

render of the notes given for the price of the property, on the allegation that they were usurious. The plaintiff claimed to be allowed the amount of the notes as a counter-claim in that suit. When the case was called for trial the cause of action was abandoned, and judgment was directed for the amount of the notes. But no judgment was afterward entered in the case. The plaintiff in the suit was insolvent, and when the notes were given it was upon an understanding that the plaintiff. in this case should still retain its interest in and control over the property, unless the mortgage it was to have as security was given, and that never was afterward delivered. What was done in that case was no defense to the present action. It was not very material to show that Olney did not tell Losee that he was in bankruptcy and expected to be discharged, when he applied for the sale of the property to him, but he swore that he did say that to him, and there was for that reason no impropriety in allowing the statement to be contradicted.

Other objections have been presented to the recovery on the part of the defendants, but they are not such as to require special attention. The fact that the receipt given by Losee was not within the scope of his authority, and for that reason not binding on the plaintiff, renders it unnecessary to examine them further. The judgment recovered was a proper one, and it, as well as the order denying a new trial, should be affirmed with costs.

DAVIS, P. J., and BRADY, J., concurred.

Judgment and order affirmed, with costs.