THE FIRST NATIONAL BANK OF OSWEGO, RESPONDENT, *v.* JOHN DUN AND JOHN DORSEY, JR.

THE SECOND NATIONAL BANK OF OSWEGO, APPELLANT, *v.* JOHN DUN.

*Replevin — when property, that has been taken by the sheriff in an action of replevin, may be levied upon under an execution issued upon a judgment recovered against the owner.*

January 9, 1882, the First National Bank of Oswego brought an action against one Dun and his assignee to replevy 10,000 bushels of malt, then lying with other malt in a malt-house in the possession of the assignee. The sheriff seized the malt and held it until January thirteenth. The defendant having given no bond, within the time prescribed by law, to entitle them to retake it, the sheriff then went to the president of the bank and told him he had come to deliver the malt, though it had never been separated from the residue thereof. The president accepted it and requested the sheriff to separate and deliver it at a designated place, which the latter agreed to do apparently as the agent of the bank. On January 13, 1882, the Second National Bank of Oswego recovered a judgment against Dun and issued an execution thereon under which the sheriff, in pursuance of its directions, levied upon the said malt. The Second National Bank claimed that the First National Bank's title to the malt was derived from an unrecorded chattel mortgage and was invalid as to judgment-creditors of Dun.

*Held,* that under the circumstances of this case the fact that the malt had been replevied did not prevent the sheriff from seizing it under the execution issued upon the judgment, and that the court erred in setting aside the levy and staying proceedings upon the execution.

APPEAL from an order staying proceedings upon an execution issued by the Second National Bank against John Dun, and setting aside a levy made by the sheriff of Oswego county, in virtue of such execution. On the 7th day of January, 1882, John Dun made a

general assignment, for the benefit of his creditors, to John Dorsey, Jr., his bookkeeper and clerk, who took possession of the assigned property, consisting among other things of a malt house, in which were 18,000 to 20,000 bushels of malt in bulk. Two days later, viz., January 9, 1882, the First National Bank brought an action of replevin for 10,000 bushels of the said malt against Dun and Dorsey, and upon the mandate in that action the sheriff of Oswego seized the 10,000 bushels of malt and kept possession of it until the 13th of January, 1882, when (as no bond had been given by the defendants to procure a return of the property and the time therefor had expired) the sheriff went to the president of the First National Bank at his banking rooms and told him he had come to deliver the malt named in the replevin papers, and that he did then and there deliver it (though it had not been separated or removed from the other portions of the 18,000 to 20,000 bushels in the malt house). The president accepted it, and requested the sheriff to separate the 10,000 bushels and to deliver it at a designated place, and the sheriff undertook to comply with that request, apparently as the agent of the First National Bank.

On the 13th of January, 1882, the Second National Bank duly recovered a judgment against John Dun upon a debt held by it for $15,415.23, besides costs, and forthwith issued an execution to the coroner. This was subsequently withdrawn, and a new one was issued and delivered to the sheriff of Oswego county, who, upon request of the plaintiff, levied on the malt in question, and other property of the assignor and judgment debtor.

On the 17th of January, 1882, the First National Bank idemnified the sheriff against the claim of the Second National Bank.

*S. C. Huntington*, for the appellant.

*Charles Rhodes*, for the respondent.

HARDIN, J.:

Both banks claim title to or an interest in the 10,000 bushels of malt through Dun, who on the 7th of January, 1882, was in possession thereof. Upon the title or interest of the plaintiff, The First National Bank, on the ninth of January, two days after the

execution of a general assignment for the benefit of creditors, by Dun to Dorsey, commenced an action of replevin and claimed the delivery of the malt. It is insisted in the argument by the appellant that the First National Bank cannot maintain any interest in or title to the malt as against the judgment and execution of the Second National Bank, because the warehouse receipts held by the First National Bank were executed by Dun, the owner, and that by the principle laid down in *Farmers and Mechanics' Bank of Buffalo* v. *Lang* (87 N. Y., 214), the same are ineffectual except by way of a mortgage on the part of Dun, and that not having been filed they cannot operate to prevent a judgment creditor from levying upon and selling the malt. We need not pass upon that question at this time, and indeed we cannot properly, as the facts upon which the question will ultimately turn are not now fully before us.

Suffice it to say that we see sufficient in the position taken in behalf of the Second National Bank, to induce us to suppose that its levy upon the malt was made for the purpose of attempting, in diligence and vigilant use of remedies, to prosecute a supposed legal right.

It may also be observed in passing that the affidavits before us suggest proper grounds upon which the Second National Bank seeks to avoid the assignment to Dorsey, and that the questions relating to such an attack are more proper for the solemn mode of investigation found in a trial rather than in the summary modes which attend the ordinary Special Term motions. (*Knapp* v. *Fowler*, 26 Hun, 202.) If, therefore, the assignment was invalid, and the interest of the First National Bank in the malt depended upon the warehouse receipts for its validity, the Second National Bank with its judgment and execution was in a situation to seize the malt as the property of Dun, and to make its execution out of the same, unless some technical rule of law prevented the sheriff holding the execution from following the command of the execution and the directions of the judgment creditor in respect thereto.

Appellants' contention is that the "property taken under replevin, either before or after surrender to the plaintiff in the replevin action, cannot be taken from such plaintiff or the sheriff on execution against one of the defendants in the replevin suit."

In considering that question, we must, upon the facts presented

to us, take notice of the fact that more than ten days had elapsed from the service of the replevin papers before the execution was levied. The right of the defendants in the replevin action to give an undertaking and have the property returned to them had expired. The sheriff was not therefore obliged to retain the property in his possession in virtue of the requisition of the replevin papers. It had already become his duty to make a manual physical delivery of the malt to the plaintiff in the replevin action. (Code of Civil Pro. §§ 1702, 1703.) He had recognized that duty, and in obedience to it he had called upon the proper officer of the plaintiff in that action, and proffered a delivery of the property, and the affidavits used upon the motion contain a statement that the officer had accepted such delivery as was proffered by the sheriff.

However, it appears that the malt remained in the storehouse of the debtor until after the sheriff received the execution. That there was in fact a levy upon the malt is shown by the affidavits. But it is said that the sheriff had received the usual undertaking from the plaintiff in the replevin action providing for the return of the property to the defendants in that action, if its return should be adjudged. But it must be borne in mind that such an undertaking did not run to the Second National Bank, nor in any manner secure or protect its rights or interests in the property.

Nor was the position of the Second National Bank in subordination to or in harmony with the interest or title asserted by the First National Bank. It was in hostility to the interest or title sought to be established through the proceeding in replevin.

Assuming that Dun had never, as against a judgment creditor, parted with the possession and title to the property, and that the same was therefore liable to levy and sale upon an execution against him, as the First National Bank had only such an interest as might be enforced against Dun or his general assignee; under such circumstances we are of the opinion that the property was liable to levy, and that the execution required the sheriff (upon being properly indemnified as he was) to levy and hold the property under his levy to the end that a sale might be made of the property. The Second National Bank was a stranger to the replevin proceedings, and as to it the property was not in legal custody, so that the same could not be reached by levy upon its execution. (*Burkle* v. *Luce*,

1 Coms., 164; affirming S. C., 6 Hill, 558; *Manning, Bowman & Co.* v. *Keenan*, 73 N. Y., 45; *Shipman* v. *Clark*, 4 Denio, 446; *Foster* v. *Pettibone*, 20 Barb., 350.)

The case before us differs from *Hagan* v. *Lucas* (10 Pet., 400) and from *Seymour* v. *Newton* (17 Hun, 32), as in those cases there was an attempt to seize property upon a process emanating from a different jurisdiction from the one under which it was held.

In the last case cited BOCKES, J., says: "To constitute a valid levy the officer must bring the property under his dominion and control. This he cannot do while it is in the hands of another officer under levy, for he could not lawfully obtain any dominion *over it while thus in the custody of the law.*"

Nor is the respondent aided by *Gilbert* v. *Moody* (17 Wend., 357), which was a case of sale of household furniture by a sheriff, and the purchaser left the goods upon the premises and they were distrained and the purchaser brought an action and insisted the *goods were in custodia legis.* But the court held otherwise, as they had been sold by the sheriff and delivered and his possession had ceased. Nor does *Morris* v. *De Witt* (5 Wend., 71) reach the question here presented, as in that case the second writ of replevin was by the defendant in the first writ, and the second was set aside on motion, as the defendant in the first had an opportunity to try his title and rights to the bog or iron ore in the first action. We have not been able to discover how the Second National Bank could have tried and determined its interest in the malt, if its execution and levy are set aside, in the replevin suit, as it is not a party to that action and, therefore, has no right to defend against the First National Bank's claim of title set up in the replevin action.

It is insisted that Dun had no leviable interest in the malt as he was a mortgagor without any right of possession, and therefore the sheriff could not levy in virtue of the Second National Bank's execution. The affidavits do not set out the warehouse receipt or mortgage held by the First National Bank, and we cannot therefore determine the point made in the argument. Of course a mortgagor who has possession, and by the terms of the mortgage has a right of possession, has a leviable interest. (*Hull* v. *Carnley*, 11 N. Y., 501; *Hall* v. *Samson*, 19 How.; 481; *Manning* v. *Monaghan*, 28 N. Y., 585.) But the position of the Second National Bank is that

the mortgage or "warehouse receipt" is, void as it was executed by Dun (*Bank* v. *Lang, supra*) and not filed or recorded in the clerk's office so as to give it any validity as against a judgment-creditor of Dun. On the other hand the First National Bank claims that the "warehouse receipt" operated as a pledge, and that the subsequent delivery of the malt gives it validity and relies upon *Parshall* v. *Eggert* (54 N. Y., 18).

As the paper is not set out, and the facts are not fully before us which affect the question, we do not pass upon the questions suggested in regard to the interest or title of the First National Bank in the malt. From the views already stated we think the Special Term fell into an error in setting aside the levy and in granting an order in the nature of an injunction upon the sheriff, and that its order, so far as it is brought up by the appeal, should be reversed, with ten dollars costs and disbursements.

SMITH, P. J., and BARKER, J., concurred.

Order reversed, with ten dollars costs and disbursements.