MANNING, BOWMAN & COMPANY, Respondent, *v.* PATRICK J. KEENAN et al., Appellants.

In an action for the alleged conversion of certain goods plaintiff's evidence tended to show that it sold the goods conditionally to O., who subsequently delivered them to L., plaintiff's agent, for the sale of its goods, to be held as security for the purchase-price. Plaintiff ratified the act of L. L. thereafter, without the knowledge of plaintiff, delivered to O a receipt for the goods, stating that they were received in store on account of O., at a specified rate for storage; this O. transferred to H., upon an alleged sale of the goods for a valuable consideration. *Held,* that, as the giving of the receipt was no part of the means needed or used to obtain the possession of the goods by L., the ratification by plaintiff of his act in this respect, was not a ratification of the receipt; that L. was not authorized to issue the same, and plaintiff was not bound thereby.

Plaintiff held the notes of O, given for the purchase-price of the goods, and in an action against it by O., set them up as a counter-claim and recovered judgment for the amount. *Held,* that this was not inconsistent either with the idea of a conditional sale or of a pledge of the goods and did not affect plaintiff's right to resort to them to realize its claim.

The goods were purchased by O. ostensibly for retail trade; the alleged sale to H. was of all the goods at a great sacrifice. Defendants asked the court to charge that if the jury believed that the title of the goods was transferred to O., to be sold by him and proceeds credited on its account, they made O. its agent to sell to H. or any one else. The court so charged, but added the words "in the usual course of business." *Held,* no error; that no authority could be implied to sell otherwise.

A coroner, to whom a requisition, in proceedings for the claim and delivery of personal property, in an action to recover its possession has been issued, stands in a like position as a sheriff, and is protected by his process in taking the property specified from the possession of the defendant named.

The provisions of the Revised Statutes (2 R. S., 285, §§ 55, 56), providing for service of papers upon a sheriff by leaving the same at his office or delivering them to any person therein belonging to the office, apply to coroners when acting in the place of the sheriff in an action wherein the sheriff is a party.

Accordingly *held,* where the coroners of the city of New York, by virtue of a requisition in an action against the sheriff to recover possession of personal property, had taken the property from the defendant, that service of affidavit of title in a third person claiming the property under section 216 of the Code, made by delivery thereof to a clerk in their office having charge of their office business, was a good service upon said coroners.

One having title to and a right of possession of property taken under pro-

ceedings for its claim and delivery, who has presented his claim under and in pursuance of said section, may maintain an action against the sheriff or coroner for a conversion of the property when the officer has obtained indemnity as provided by said section and has delivered up the property to the plaintiff in the replevin suit.

The officer is primarily bound by his process to keep the property or to deliver it to the plaintiff; the service of affidavit and notice of claim suspends that obligation, and releases him from it unless indemnity is given; when given, the obligation again attaches, and the claim of the person entitled to the property is valid, the officer being required to rely upon the indemnity.

No other demand is necessary to the maintenance of the action against the officer than the service of affidavit and notice of claim prescribed by said section.

The history of the remedy by replevin in England and in this State, given.

(Argued February 14, 1878; decided March 19, 1878.)

Appeal from judgment of the General Term of the Supreme court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a verdict affirming an order denying a motion for a new trial. (Reported below, 9 Hun, 686.)

This action was brought by plaintiff, a manufacturing corporation, against defendants who were coroners of the city and county of New York, for the alleged conversion of a quantity of silverware.

Plaintiff's evidence tended to show the following facts: The goods in question were sold conditionally to one Olney, in May, 1869, who proposed to open a retail store for such goods in the city of New York. He gave his notes for the purchase-price, and executed a written instrument stating that the goods should remain the property of the plaintiff until paid for. The sale was made through plaintiff's agent in New York, one Losee. Olney, in August, 1869, closed his store and delivered the goods in question to Losee as such agent, as security for the purchase-price. Plaintiff ratified the act of Losee in receiving the goods. Subsequently Olney obtained from Losee a receipt, as follows:

"New York, *August* 10, 1869.

"Received in store, No. 60 John street, for account of

George Olney, eight cases containing silver-plated goods and Brittania goods on storage, at the rate of 50c. case per month.

"Value, $2,000. A. S. LOSEE."

This receipt Olney indorsed over to one Hodges, upon an alleged sale to him of the goods. Olney, as a witness for defendants on the trial, testified that Hodges paid to him $500, and agreed to pay some more, but the amount he could not recollect. In November, 1869, Olney commenced a suit against plaintiff, alleging that the notes given by him were usurious and void; asking for the appointment of a receiver of the property, etc. Plaintiff (the defendant in said action) set up among other things the notes so given to it as a counter-claim. Upon the trial of said action Olney withdrew his claim to recover for the alleged usury, and plaintiff obtained a judgment for the amount of its counter-claim. In February the goods were seized by the sheriff of the county of New York upon an execution against Olney, and taken from the possession of Losee. Hodges thereupon commenced an action to recover possession, and under proceedings therein for its claim and delivery, the goods were taken by defendants, to whom the requisition had been issued, as coroners, from the possession of the sheriff. Plaintiff served an affidavit and notice of claim, as prescribed by the Code (§ 216), upon defendants' clerk, who had charge of their office business, at their office. Hodges gave to defendants a bond of indemnity, and thereupon they delivered the goods to him.

Further facts appear in the opinion.

*Robert S. Green*, for appellants. At common law a public officer is not liable in an action for tort for an act done in the strict discharge of his duty, performed in exact compliance with the requirements of law. (*Foster* v. *Pettibone*, 20 Barb., 350; *Shipman* v. *Clark*, 4 Den., 446; *Willard* v. *Kimball*, 10 Al., 211; *Schofield* v. *Whitelegge*, 49 N. Y., 259.) There is no affirmative legislation in the provisions of the Code conferring such a right of action. (1 Wait's Pr.,

738 ; Wait's Code, notes to, § 216 ; *Bullis* v. *Montgomery*, 50 N. Y., 352–356.) No right of action having existed, and none being given by statute, the court will not raise one by implication. (*Butler* v. *Baker's Case*, 3 Coke, 29 ; *Letchmere* v. *Thorougood*, 3 Mod., 236, note *b* ; *Smith* v. *Miller*, 1 T. R., 475.) A demand for the delivery of the goods and a refusal was necessary to the maintenance of the action. (2 Greenl. Ev., §§ 644, 645 ; *Edgerton* v. *Ross*, 6 Abb., 189.) This action could not be maintained because the claim and original affidavit were not served upon the coroners personally. (6 Abb. Pr., 189 ; R. S. [6th ed.], 727, 728; §§ 46, 112, 447 ; Code, 216.) The acts of Losee were the acts of plaintiff as its agent, and it was bound by his receipt. (*McCombie* v. *Spader*, 1 Hun, 193 ; *Gibson* v. *Stevens*, 8 How. [U. S.], 384 ; *Crocker* v. *Crocker*, 31 N. Y., 507 ; *McNeil* v. *Tenth Nat. Bank*, 46 id., 325 ; *Moore* v. *Mech. Nat. Bank*, 55 id., 41 ; *Rawles* v. *Droher*, 3 Keyes, 572.)

*Addison Brown*, for respondent. The delivery of the goods at Olney's store being conditional only, he had no right to the possession of them, and could convey no better title to Hodges. (*Morris* v. *Rexford*, 18 N. Y., 555 ; *Barnard* v. *Campbell*, 55 id., 456.) The receipt from Losee was without authority from plaintiff, and Hodges was not a *bona fide* purchaser. (20 Wend., 267.) Unless the receipt was a warehouse receipt within chapter 326, Laws 1858, section 6, its transfer even for value, without notice, would confer no greater right than Olney had. (*Ballard* v. *Burgett*, 40 N. Y., 314 ; *Worster* v. *Sherwood*, 25 id., 278 ; *Barnard* v. *Campbell*, 55 id., 461 ; *Hammet* v. *Linerman*, 48 id., 399 ; *Linner* v. *Cruger*, 40 Barb., 633; *Jenkins* v. *Usborne*, 7 M. & G., 699.) The receipt was not a warehouse " receipt," under the act of 1858. (*Whitlock* v. *Hay*, 58 N. Y., 484.) The receipt constituted no estoppel upon the plaintiffs. (42 N. Y., 448; 55 id., 463; *Strong* v. *Strickland*, 32 Barb., 289; *Hutchins* v. *Hibbard*, 34 N. Y., 27; *Muller* v. *Pender*, 55 id., 334; 6 Hill, 536, 537; *Dezell* v. *Odell*, 3 id., 219.)

Hodges could not be deemed a *bona fide* holder without notice. (55 N. Y., 463; *Gibson* v. *Stevens*, 8 How. [U. S.], 401.) The affidavit and notice of claim necessary to charge the defendants under section 216 of the Code were duly served. (Code, § 419; 3 R. S., *444, § 84; *285, § 56.) Defendants having had notice of plaintiff's title before delivery are liable both by common law and the manifest intent of section 216 of the Code. (Rol. Abr., 552; Vin. Abr., Replev. Y., 3; 21 Ed., 4, 54; *Stinson* v. *Reynolds*, 14 Barb., 506; *State* v. *Jennings*, 14 Ohio, 73; Coke Litt., 145 *b*; *Leonard* v. *Stacy*, 6 Mod., 139; *Lisher* v. *Pierson*, 2 Wend., 349; *Miller* v. *Davis*, 1 Comyn, 590; 8 J. R., 44; 20 Wend., 561; *Edgerton* v. *Ross*, 6 Abb., 189; *Haskins* v. *Kelly*, 1 Rob., 160; *King* v. *Orser*, 4 Duer, 437; *Bullis* v. *Montgomery*, 50 N. Y., 355.)

FOLGER, J. The jury were charged with the question of fact, whether the plaintiffs had such an interest in the property in question in the first instance as would maintain an action for an interference with it. They were told that to entitle the plaintiffs to recover in this action at all, it must be found that they were the owners of the property, and had never ceased to be the owners of it ; or, that although it had gone into Olney's actual possession at one time, and he had been allowed to treat with it, to keep it, to sell portions of it in order to raise money out of it to pay to the plaintiffs, it was finally brought back again by him, and put into Losee's hands, to hold as a security to them for the purchase-price of it.

The verdict of the jury in favor of the plaintiffs is an affirmative answer to one or the other of these propositions ; and it follows that at and before the time of the giving by Losee to Olney of the receipt or instrument in writing, expressing that the goods had been received in store by Losee, for account of Olney, on storage, at a certain rate of storage per month, the plaintiffs had, as matter of fact, such an interest in the property, as owners or pledgees, as gave them a

*prima facie* right to inforce a claim to it against any one withholding it from them.    There are some other facts in the case which it is claimed operate to defeat that right.

First. It is claimed that by reason of the paper given by Losee to Olney, Hodges, purchasing from the latter, got a good and exclusive title to the goods.    If the plaintiffs are bound by the act of Losee in giving that paper, and if Hodges bought of Olney in good faith, and for a valuable consideration, relying upon it to his harm if his title is not now sustained, it would be difficult to hold that this claim is not good.    The paper, by its terms, indicates an ownership of the property by Olney, and a right to the possession of it at any time, on the payment of the storage.    It is such a paper as one might well trust to, for a belief that he who made it had no claim to the property against the one to whom it was given, save for the charge of storage at a fixed rate ; and a purchase in good faith, and for a valuable consideration, in reliance alone, or chiefly, upon it, would raise an estoppel in favor of the purchaser against him who made and delivered it.    But though it may be sufficient to work that effect against Losee, it is a different question whether it is enough therefor against the plaintiffs.    It does not appear that they knew of its existence until after the transaction between Hodges and Olney ; but it is said that it was the act of the agent of the plaintiffs, and thus their act.    It was not an act though, within the scope of his agency, nor was it an act, which was a part of any transaction within or without that scope, which has been ratified by the plaintiffs.    True, the plaintiffs ratified the act of Losee in taking from Olney the possession of the goods, to hold them as security for the price. Had the giving of that paper been a part of the means needed or used to obtain that possession, then an adoption of the possession would have been an adoption of the paper ; but it was not given until some time after possession was got.    Losee was under no necessity of giving it to acquire or maintain possession.    He had no authority to give it.    All that was beneficial to the plaintiffs in the surrender of pos-

session by Olney to Losee had already been accomplished. It was no part of the bargain for the transfer of possession, and it was, if valid against the plaintiffs, an injury to their security. By adopting the first act of Losee, which was of benefit to them, they did not adopt a subsequent act of his, of which they were ignorant, and which was not a part of the act ratified by them, nor to their benefit, and to do which he had not their authority. Nor had Losee authority to treat the goods as his own ; though he was ostensibly to Hodges in the possession of them, and ostensibly with exclusive right ; save as the paper gave notice of a right in Olney, he was actually holding them in the right alone of his principals. The principals were not bound to make known that his possession was special, and for them, nor were they to be affected injuriously by a mistake therein of Hodges. It must be noticed here that it was left to the jury to say whether Hodges was a *bona fide* purchaser of the paper and what it represented ; or whether he had reason to believe that the plaintiff or Losee had any claim upon the property ; or that Olney's relation to it was different from what was expressed in the paper. The verdict of the jury sustains the title of the plaintiff and is against that of Hodges, on which the defendants as to this branch of the case relied. The jury must have found that he did not purchase in good faith.

Second. It is also claimed that the plaintiffs held as their own the notes of Olney, given for the price of the goods, and that they availed themselves of them as a counter-claim in his action against them. I do not see that that is necessarily inconsistent, either with the notion of a conditional sale of the property at first, or with the idea of a possession of it afterwards as a pledge or security for the price. It is not unusual that a vendor or a creditor has two strings to his bow. He may use either means of realizing his purchase-money or debt without losing the benefit of the other, and the right finally to resort to it, if need be. I do not see how the dealing of the plaintiffs with the notes of Olney has been different from that. The facts as to the notes were left to

the jury to say whether they showed an unconditional delivery and a final payment for the merchandise. The verdict gave a negative. It appears then that in the view of the jury upon all the facts of the case as submitted to them, the plaintiffs had in the start an absolute or a special right or interest in the property, with which they had not parted when this action was commenced. That right had, however, been interfered with before these defendants took it. The sheriff of the county of New York had seized it on an execution against the property of Olney, and it was in the actual possession of the sheriff or his deputy or his agent when the defendants took it, according to law, by virtue of the requirement made upon them by Hodges. They were required by papers having the effect of valid mandatory process to take this specified property from that particularized person, and they did it; and for a time they did no more, nor for a time, so far as the record shows, made omission to do anything in the line of their duty. We have held, that so far as they had then gone, like process in the hands of the sheriff protects him in like acts. (*Bullis* v. *Montgomery*, 50 N. Y., 352.) We see no reason why that holding should not be adhered to in the case of these defendants, who in these acts stood in a like position to that of the sheriff, with like duties, powers and defenses.

But a question is brought out in this case which was not in *Bullis* v. *Montgomery*, nor, as far as we have noticed, in any other case in this court.

The Code (§ 216) empowers the plaintiffs to make an affidavit of their title to the property and right to the possession of it, and of the grounds of such right and title, and to serve the same upon the defendants. Thereupon the defendants were no longer bound to keep the property, nor to deliver it to Hodges, unless he should on demand indemnify them against the plaintiffs' claim.

The plaintiffs did serve a paper, intending to avail themselves of the provisions of law above stated. A question was made whether the paper served was an affidavit, whether

it was the original or a copy only. There was room for a doubt in the testimony, but it was left to the jury to say, and they have found that it was the original affidavit which was served. There was also a point raised that the service having been upon a clerk of the defendants, or at their office, was not a good service upon the defendants, and that it should have been made personally upon them. That clerk, during all the term of office of the defendants had the entire charge of their office business; kept their books; attended to the service of process upon the sheriff; supervised the taking of property in replevin proceedings against the sheriff, and made the formal returns of papers in those proceedings. He gave an admission of service. He took proceedings on the claim of the defendants by accepting a bond from the plaintiffs in the replevin suit, as is to be inferred. He was not certain whether it was received by him in person, or was left on his desk for him, though there was room for an inference that he received it in person, and it was left to the jury to say, and they have found that it was. The trial court held that the service thus made on the clerk of the defendants was as good as a service upon the defendants personally. By section 419 of the Code all the provisions of it relating to sheriffs apply to coroners when the sheriff is a party. By section 468, no statutory provisions are repealed, save such as are inconsistent with the Code. By the Revised Statutes (2 R. S., 285, §§ 55, 56) the sheriff is required to keep an office, and every paper to be served on him may be served by leaving it there, or delivering it to any person therein belonging to the office, and such service is equivalent to personal service upon the sheriff. I think that these provisions are applicable to the coroners, and that the service made in this case was as effectual as personal service upon them. (See, also, 2 R. S., 441, § 84.)

It having been found by the jury that the plaintiffs had such an interest in the property as gave them a title thereto and a right of possession therein, and they having made their claim upon the defendants in accordance with section 216 of

the Code, we are brought to the main question in this case, whether by virtue of that section the plaintiffs have a right of action against the defendants for the property, or the value thereof.

We must assume that the section was not adopted by the Legislature without some purpose; and it must also be assumed that the purpose was a practical and reasonable one, directed to some useful result, beneficial to some of the persons or officials authorized to act under it. We must then look about for such purpose and result. There are two results quite plainly provided for. When a claim is made in accordance with the section, if the plaintiff in the replevin proceedings does not indemnify the officer, in the manner pointed out in the section, the officer is not bound either to keep the property or to deliver it to the plaintiff; and the officer may retain the property a reasonable time for the purpose, and that purpose only, of demanding such indemnity. Now the inquiry at once arises, if the plaintiff in the replevin does not give indemnity, and the sheriff is not bound to keep the property, nor to deliver it to that plaintiff, what is he bound to do with it? He may not keep it for himself; he is not bound to keep it as sheriff. He is not bound to execute the requirement of his process (so to call it), and to make delivery to that plaintiff. Yet he owes some duty, to some one, in regard to it. He is in possession of property, which he has taken from another, in which he has himself no personal right, and as to which he is no longer bound to exercise an official power. It would seem to follow as a necessity, either that he must retrace his steps and restore the property to the defendant in the replevin proceedings, or to the agent of that defendant, whomsoever he took it from; or he must make delivery to the other person who has made claim to it, under section 216. It would seem a nugatory act for the claimant to go through the procedure of making claim, if the result is not to be that he obtains his own property, but that it is given up to another. On the other hand, if the plaintiff in the replevin proceedings chooses to give

the indemity, what is the result? It would seem that, in such case, the officer is bound to keep the property or to make delivery to the plaintiff, or to do his duty as to it, in accordance with law and the directions of the process. But is the person claiming to own the property to be thwarted and held entirely at bay, merely by an indemnity to the officer? It is not an indemnity to the claimant. No provision is made for an assignment of it to him. It is an indemnity to the officer; but against what? If against a claim merely, which cannot be prosecuted, the plaintiff giving it takes no hazard; nor is there, if the claim cannot be inforced, anything against which the officer needs an indemnity. The requirement of an indemity to the officer, necessarily implies, that there is some liability which the officer has incurred, from the possible consequences of which he needs to be indemnified. It is not the liability to the defendant in the replevin proceedings, nor to anyone else, by reason of his primary execution thereof, for as we have seen his process protects him therefrom. It is, then, a liability arising from that claim under section 216, and to the person making that claim; and it is a liability capable of inforcement by action against him, the officer. It is not to be denied that the section is not complete in expression. It is negative in form, and leaves the affirmative portion of the purposed enactment to be implied. When it says that the officer shall not be bound to keep the property, or to deliver it to the plaintiff, *unless* the plaintiff, on demand, shall indemnify the officer against the claim of the third party; though negative in form, it conveys the affirmative meaning, that if the plaintiff does so indemnify, then the officer shall keep the property or deliver it to the plaintiff. When it says that no claim shall be valid against the officer, *unless* made as provided in the section, though negative in form, it conveys the affirmative meaning, that if the claim is made as provided, it shall be valid against him; and if valid against him, then as a necessary result, inforceable against him by the other person making it, in any way known to the law for

the inforcement of a valid claim against another, he denying and resisting it.

It is to be observed, too, of the provisions of the act of 1788, and of the Revised Statutes, hereafter cited, that they do not in terms declare, that if on the trial of a claim made, the property shall be found in the defendant or the possessor, a return of the goods shall be made to him; yet that such result followed has never been doubted; unless, under the Revised Statutes, there was indemnity given by the plaintiff. But it was an affirmative result, from a statute negative in phraseology. The word *unless* has the force of *except;* its primary meaning is "unloosened from," so what follows in the sentence after the word *unless* is excepted or unloosened from what went before it; and though the officer is primarily bound by his process to keep the property, or to make delivery to the plaintiff, the service of affidavit of claim suspends that obligation and he is no longer bound so to do, unless indemnity is given, when he is again bound; and as no claim by a third person was, without the section, valid against an officer who had obeyed strictly his process, so none should after that section be valid, unless made as it provided, and if so made, then it should be valid. For such a form of expression in a statute sometimes amounts to an affirmative enactment, and in fact *in proprio vigore*, confers all that is excepted from a negative or restrictive provision.

There is something somewhat analogous in the construction of written instruments *inter partes*. There words of condition will be construed into words of covenant, when such is the apparent intent and meaning of the parties. (*Huff* v. *Nickerson*, 27 Maine, 106; *Paschall* v. *Passmore*, 15 Penn. St., 295.) And words of reservation and exception have been held to operate as a grant of a right. (*Wickham* v. *Hawker*, 7 M. & W., 63; *Doe ex dem.* v. *Lock*, 2 Ad. & E., 705.) A legislative act is not quite analogous to a deed or a lease. In the latter instruments the condition which is held to be a covenant is deemed the covenant of the grantee or lessee — the party to it who did not grant or demise the

principal thing in it ; still there is an analogy, so far as the rule goes that words of condition will not be construed always as negative words, and will be held to express an affirmative creation of right, if such be the apparent intention and meaning. A text-book says : "The form of the *proviso* is often used to express condition, but 'if' affirmatively, 'unless' negatively, are preferable." (Gael on Legal Composition, 69.) Nor are instances lacking in enactments, where it is manifest that by the expression of matter under the lead of the word "unless," it was meant to affirm the contrary of what was previously negatively stated. In the early laws of the pilgrims of Plymouth colony was this : "Ordered, that all fences be four feet high, or be otherwise sufficient in the judgment of the fence-viewers, or for such defect such person to bear his own damage, *unless* the damage be done by hogs unyoked." (Sullivan's Land Titles, p. 369.) The statutes, Edw. 3 and 4, 6, 21, enacted that "no person shall buy to sell again any butter or cheese, *unless* he shall sell the same again by retail in open shop. * * * " Who doubts that the word *unless* in these enactments was the introduction of an affirmative legislative purpose, that in the one case the buyer might sell again if he sold by retail, in open shop ; and in the other, the person, though delinquent as to height and sufficiency of fence, might have his damage of the owner of unyoked swine trespassing ? See, also, *Wainwright* v. *Miles* (3 Moore and Scott, 211); *Becke* v. *Smith* (2 M. & W., 191); *Binns* v. *Towsey* (7 Ad. & Ell. 869), for construction of statute with similar use of the word "unless" ; and where the clause begun by that word is held to be the expression of an affirmative legislative purpose. Well may a text-writer say, that if such expressions do not confer a right or power, they are mere impertinences. (Goode on Leg. Expression, p. 8, *n.*)

We arrive at the same result if we consider what was the rule and practice in England in replevin, and the modifications made by statute in this State. In England there were two kinds of replevin, one where the writ issued out of

chancery, and one by the statute of Marlbridge (52 Hen. 3, c. 21), which enabled the sheriff to replevy without writ, when, having taken security, he proceeded on the plaint of the plaintiff, either by parol or by precept to his deputy. In the latter the defendant, or his agent, could make claim of property, whereupon the replevin fell at once (Gilb. on Rep., 115; Co. Litt., 145 *b ;* Dyer, 173), and the sheriff could not deliver the goods to the plaintiff, for the right to property could not be tried without writ. The plaintiff was put to his writ *de proprietate probanda*. If thereby it was found for the defendant the plaintiff was amerced, and the sheriff could no further proceed. If it was found for the plaintiff the defendant yielded damages to the plaintiff, and was put in prison until he paid a fine to the king. (Sewell on Sheriff, 544; Watson on Sheriff, 300; Wilkinson on Rep., 16.) If the replevin was persisted in, notwithstanding the claim, and the goods were taken from the defendant, trespass lay against the plaintiff in the replevin who was aiding in the execution of it. (*Leonard* v. *Stacy*, 6 Mod., 69; *S. C.*, 6 id., 139.) In Comyn's Digest (Trespass, ch. 2), it is said that in such case trespass lay against the sheriff also, relying upon the case just cited, which does not in terms so declare, though such is the effect of the decision ; and see *Hocker* v. *Stricker* (1 Dallas [Penn.], 245); *Lisher* v. *Pierson* (11 Wend., 58). Under our modern forms of action and pleadings there arises no question of whether trespass or case is the appropriate mode, and the only inquiry which presses us is, is the officer liable at all ?

There does not seem to have been any special writ or practice by which a person, other than the defendant in the replevin, could interfere therein, or there claim and inforce his rights in the property. He was not entitled to the writ *de proprietate probanda*. (Bac. Ab., Rep., E. 4; Gilb. on Rep., § 11.) That, if he was the owner of the property, he had right of action against some one, and some process therefor, cannot be doubted. If the real owner, though not named in the writ, nor having actual possession of the goods

when the writ was served, he might take them by his own act from the custody of the officer, if it were done peaceably; for a man is never a trespasser in peaceably obtaining possession of his own property. (*Spencer* v. *McCoon, infra; Hyatt* v. *Wood*, 3 J. R., 239; 4 id., 150, 313.) And he might have an action to do that by the aid of the law when resisted, which he might do by his own act peaceably if unresisted, but not against the sheriff if the letter of the command in his process had been followed. But it does not need that we inquire further as to that at this time. It is sufficient for our present purpose that we have seen, that on a claim made by the defendant in the replevin, the officer, and all others acting in aid of him, must have at once desisted; or if they went forward they became trespassers *ab initio.* (Bac. Ab., id., *supra.*) A statute on this subject was early enacted in this State, in 1788. (1 R. L., p. 91.) The right of the defendant in the replevin, or the possessor of the property, to make claim, was recognized. It was provided that if the sheriff did not yield to it, and proceeded to make deliverance to the plaintiff, and to dispossess the defendant thereof, besides being answerable for the trespass, he should forfeit £100. (See *Lisher* v. *Pierson, supra; Morris* v. *DeWitt*, 5 id., 71.) It is to be observed that it is either recognized or declared by this statute that the sheriff is liable in trespass, and that, notwithstanding he had taken security from the plaintiff for a return of the property. The Revised Statutes somewhat modified the procedure. By them, as by the act just cited, the defendant, or the possessor of the property (see *Spencer* v. *M'Gowen*, 13 Wend., 256), could make a claim to the sheriff; but he had more than that to do. It was for him also to call for a jury to try the claim, a proceeding which was a substitute for the writ *de proprietate probanda.* (5 Edm. Stats., 498.) If the jury found for the plaintiff, the sheriff was to forthwith make deliverance to him. If they found for the defendant, the sheriff could not make deliverance, unless the plaintiff should indemnify the sheriff to his satisfaction. If the sheriff made

delivery after such claim, and before such inquest, he for-
feited $250 to the claimant, besides being liable for all dam-
ages sustained thereby.   The revisers' notes (Edm. Stat.,
*supra*) inform us that these provisions were to conform the
practice in replevin to that on seizures of property on execu-
tion and claim thereof.   Now it is familiar to us, that a sheriff
is bound to levy upon goods in the hands of the defendant
in the execution, on their being pointed out to him as the
property of the defendant.   (*Camp* v. *Chamberlain*, 5 Denio,
198.)    And that at the same time he is bound, at his peril,
to take only the goods of the defendant, and is liable as a
trespasser if he takes those of a third person.   (*Van Antwerp*
v. *Newman*, 2 Cow., 543.)    Hence it is that the law has
provided this means of an inquisition by a jury to try the
title, and the right to ask indemnity from the plaintiff in
the execution (*Curtis* v. *Patterson*, 8 Cow., 65) ; so that
between these two liabilities he may go with safety.

It is well to observe here, that in an action by the owner
of property taken on execution against another person, an
inquisition taken under that practice, which finds that the
property is that of the defendant in the execution, is no
defense to the officer against an action by the real owner,
though he has been obliged to proceed by being furnished
with indemnity by the plaintiff.   (*Bayley* v. *Bates*, 8 J. R.,
185; *Townsend* v. *Phillips*, 10 id., 98; *Van Cleef* v. *Fleet*,
15 id., 147.)    The officer serving the execution must rely
upon the indemnity furnished him by the plaintiff.   So it
would seem, in replevin under the Revised Statutes, the
indemnity furnished to the sheriff, after claim and inquisi-
tion, is for his protection from the liability incurred by a
delivery of the property.   The bond taken at the commence-
ment of the replevin is assignable to the defendant to be sued
by him.   (Section 64.)   It does not appear that the indem-
nity to the sheriff is made assignable by any statutory pro-
vision.   The latter was not for the due prosecution of the
writ, but for the protection of the sheriff against the posses-
sor of the property for the taking of it.   The Code has still

further changed the practice in replevin. When the chapter therein, of the claim and delivery of personal property, was adopted in 1848, it was intended as a substitute for the former action of replevin. (*Nichols* v. *Michael*, 23 N. Y., 269.) Though it was not complete in its provisions, yet it did substantially provide a remedy like unto the former action of replevin. One important difference is to be noted. Theretofore the property of a person might be taken from him by a sheriff on a plaint or writ in replevin, without any security given directly to the owner, or for his benefit, and with no right of action to him against any one but the plaintiff in replevin, and with no mode of making a claim and having an inquisition of title. For as we have seen (*Bullis* v. *Montgomery, supra;* see, also, Wait's Practice, and cases cited, vol. 1, p. 738), the sheriff was protected by his process. The Code so fashions the process that the command to the sheriff is to take specific goods from a particular person. Hence it it does not *per se* protect him from taking from any other person, and thereby the reason is done away which supported the rule in *Foster* v. *Pettibone* (20 Barb., 350); *Shipman* v. *Clark* (4 Denio, 446); *Willard* v. *Kimball* (10 Allen, 211). There is another important difference. It leaves the contending parties to assert their own rights. There is no intervention of a sheriff's jury to try a claim of title. Each party, if he has confidence in his title, is empowered to maintain it, to take possession or to retain possession, on giving security to his adversary for the return or production of the property at the end of the litigation, or which security shall then stand in the place of the property. But it did not give that right, or any right, to the person possessing the property, as did the Revised Statutes and the statute law before them.

This obvious omission was supplied in 1849, when section 216 was adopted. It then revived the mode of making a claim, and recognized the right so to do of any person other than the defendant in the replevin or his agent. But in consistency with its idea of leaving the parties to take their own

risk of their title, and to assert it by giving security for obtaining or keeping the property, without the intervention of a jury ; it excused the sheriff after such claim was made from the obligation to deliver to the plaintiff or to hold the property, unless the plaintiff saw fit to indemnify the sheriff ; and it recognized as valid against the sheriff any claim duly made, putting him to his reliance upon the indemnity from the plaintiff, giving him a reasonable time to demand that indemnity, and to retain the property while the indemnity was forthcoming.    When we say it recognized the claim as valid against the sheriff, we do not mean as established against him, but as so formally and duly made as to base a right of action against him, to which his process would not alone be a bar.    We say so the Code does, for the reason that to that end lead the various changes in the practice of replevin from the statute of Marlbridge, through the act of 1788 and the Revised Statutes, to the Code of Procedure ; and so indicates and declares the analogy of the practice and of the rights of parties and third persons, on the seizure of property by execution.    As formerly and now, the sheriff would be protected by an execution only in taking the property of the defendant therein ; so now under replevin requisition, he is protected by it only in taking the property from the defendant.    As formerly and now, the plaintiff could compel him, by tendering indemnity, to levy an execution on any goods pointed out to him as those of the defendant ; so now in replevin the tender of indemnity compels him to proceed, notwithstanding the claim of a third person.    As formerly and now, a third person asserting ownership of goods taken by the sheriff on execution could bring action against him, notwithstanding the indemnity from the plaintiff compelled him to go forward ; so now the third person duly making claim has right to bring action on the same course being taken by the plaintiff.    In short, the Code leaves all claimants to the property to protect their interests at their own risk, giving the sheriff the right to indemnity against final liability to any of them.

Thus, in our judgment, the fair interpretation of the words of section 216, and the course and growth of legislative provision on the subject, to which we may add the reasonableness of such a result, lead to the conclusion that the law now allows an action by a third person, against an officer executing a requisition for a delivery of property, after claim has been duly made, and no longer holds that his process is a bar thereto.

It is said that there should have been a demand made upon the defendants and a refusal by them before an action would lie.  But what more formal and explict demand could be put in shape than that furnished in this case by the service of the affidavit, and notice in writing claiming right, and claiming a delivery of the property ?  The defendants were fully apprized by it that the plaintiffs would insist upon their right to the property in the control of the defendants, and the defendants were put to their option to admit the claim and surrender it, or to take their indemnity from the plaintiff in the replevin and brave the consequences.

Several points arise on refusals to charge or on exceptions to the charge made.  Some of them have been substantially passed upon in the foregoing remarks.  The others we will briefly consider.

First.  The request : That under the evidence, as matter of law, Hodges was a purchaser for value, without notice of the plaintiff's claim to the goods in question.

If this were true as an abstract proposition, yet, it would have no pertinency to the case.  Hodges may have paid value to some one not authorized to sell, and may have done this, without notice that any other, than his assumed vendor, had title or claim.  But that alone would not give him title.  There would still be the question whether Losee had authority to issue the receipt.  For without that authority Hodges was bound by the fact that the possession of the goods was not in his vendor.  It was in another person.  That put him upon inquiry.  He was satisfied by the receipt and sought no further.  But if that did not bind the plaintiffs they are

not to be affected by his failure to push his inquiry far enough to find out their title.

Second. That if the receipt was not indorsed "*not negotiable*," the legal effect of the same was to make the goods deliverable to Olney on his order.

Had the receipt been an instrument operative against the plaintiffs, this might have been so. But the proposition, as stated to the court by the defendants, would have misled the jury, if given to them. The plaintiffs having the title to the goods or the right of continued possession, and not having authorized the issuing of the receipt, that instrument did not operate to make the goods so deliverable, until Olney or his assignee had paid to the plaintiffs their due.

Third. At the request of the plaintiffs, the court charged that Losee's individual receipt did not bind the plaintiffs, unless the jury found that he had authority to issue a warehouse receipt for their property. The defendants excepted.

It may be doubted whether this proposition is strictly correct as worded, and as now looked at. The plaintiffs would have been bound by the receipt had they authorized it, though it was not technically a warehouse receipt, and though he had not authority to issue that kind of receipt. But, as there was no evidence that Losee had any prior or subsequent authority to give the paper which he did, nor that the plaintiffs ratified or knew of it, the statement to the jury did not mislead them, nor harm the defendants. For there was no light, in which that paper could be viewed under the evidence, in which the plaintiffs could be affected by it.

The defendants requested the court to charge that if the jury believed that the title to the goods was afterwards transferred by the plaintiffs to Olney, to be sold by him, and to credit the proceeds on their account, they made Olney their agent, to dispose of the goods to Hodges, or to any one else. The court so charged, by adding the words, "in the usual course of business."

We see no error in that. There was nothing in the testi-

mony to show that Olney had any power from the plaintiffs to sell the goods in a manner out of the usual course of the trade in such articles. If he was empowered at all to dispose of them, it was in the way of a retail trade, for which he ostensibly bought them. Surely the testimony did not tend to show that he was authorized by the plaintiffs to sell them in a lump, at a great sacrifice, and on terms of which he even had no precise recollection.

We find no error, calling upon us for a reversal of this judgment; it should be affirmed.

All concur, except CHURCH, Ch. J., not voting.

Judgment affirmed.