MORDECAI BENGUIAT and INTERCONTINENTAL COMPANY, Plaintiffs, *v.* THE GOTHAM NATIONAL BANK OF NEW YORK, Defendant, in Proceedings for Assessment of Damages on Injunction Bond by the MANUFACTURERS TRUST COMPANY, Claimant under Section 895 of the Civil Practice Act, Respondent, THE MASSACHUSETTS BONDING AND INSURANCE COMPANY, Surety, Appellant.

First Department, January 24, 1941.

*Carl Sherman* of counsel [*Sherman & Goldring*, attorneys], for the appellant.

*Leonard G. Bisco* of counsel [*Newman & Bisco*, attorneys], for the respondent.

MARTIN, P. J. The plaintiff Benguiat controlled the plaintiff Intercontinental Company which owned certain waterfront property at Edgewater, N. J. The defendant Gotham National Bank became the owner of the property in 1922 as the result of foreclosure of its junior mortgage and also a prior first mortgage. The bank sold the property in 1923 to Hudson River Dock and Warehouse Company, part of the consideration being a purchase-money mortgage for $155,000 which was foreclosed when the purchaser subsequently defaulted.

At the sale on the foreclosure of this purchase-money mortgage in 1924 the plaintiff Benguiat bid in the property for $173,650, and made a down payment thereon. When he failed to complete the purchase the bank moved in the New Jersey court to set aside the sale and for an order directing a resale. At this point the present action was commenced by the plaintiffs Benguiat and Intercontinental Company charging the bank with fraud and demanding an accounting, and on January 14, 1925, plaintiffs obtained an injunction restraining the bank *pendente lite* from proceeding with the New Jersey foreclosure action and enjoining it from disposing of the Edgewater property.

The injunction was conditioned on the furnishing of a bond for $25,000 which was issued by the appellant, The Massachusetts Bonding and Insurance Company. The trial resulted in a judgment, entered December 14, 1929, dismissing the complaint without prejudice, and on an appeal from that judgment the injunction was continued on condition that an additional undertaking be filed in the sum of $25,000, which additional bond was also issued by the appellant. The judgment was affirmed (231 App. Div. 828) and leave to appeal to the Court of Appeals was denied (233 App.

Div. 840), whereupon the injunction *pendente lite* became finally dissolved.

The present aspect of the litigation involves the liability of the appellant on its two surety bonds. The record discloses that while the injunction *pendente lite* was outstanding against it, the Gotham National Bank, in May, 1925, transferred substantially all of its assets, including its rights in the Edgewater property, to the respondent Manufacturers Trust Company in exchange for 7,500 shares of the stock of the trust company. The Edgewater property was shown on the examiner's report, which was the basis for the transfer, as follows:

" STATUTORY BAD DEBTS AND OTHER OVERDUE PAPER
* * *

| | Amount | Slow |
|---|---|---|
| Hudson River Dock & W. H. Co. | 155,000 | 137,000 |

Real estate mortgage due 26 — Foreclosure proceedings account unpaid interest. Sale held and sold for 171M. Purchaser putting up 22M and failed to complete payment. To be sold again if injunction brought by Benguiat is released. After charges, balance held by sheriff may apply."

No mention was made of the injunction bonds as assets. The attention of the trust company was called to the suit of the plaintiffs and it was agreed that the bank should defend the litigation, that its attorneys should be compensated by the bank, and that it should not otherwise be liable for the outcome of the suit. Thus it appears that the trust company purchased the property with knowledge of the restrictive effect of the injunction which at that time had been outstanding for more than five months, realizing, of course, that disposition thereof must await the outcome of the law suit and that if the plaintiffs were successful the title of the trust company would be doubtful.

The damages sustained by the bank have been paid and the sole questions on this appeal relate to the appellant's liability for damages assessed in favor of the Manufacturers Trust Company and the rule of damages applied.

The undertakings in this case were given in compliance with the requirements of section 893 of the Civil Practice Act, and the surety company undertook to pay to the party enjoined " * * * such damages, not exceeding a sum, specified in the undertaking, as he may sustain by reason of the injunction * * *." The trust company was not the party enjoined and it has no rights whatever under the specific language of section 893. It has been determined, however, that the trust company is pro-

tected under the provisions of section 895 of the Civil Practice Act. That section reads as follows:

" § 895. Damages sustained by a third person. Where the defendant enjoined was an officer of a corporation, or joint-stock association, or a bailee, agent, trustee or other representative of another, and the damages sustained by him are less than the sum specified in the undertaking, the court or the referee may also separately ascertain and determine the damages sustained by reason of the injunction, by the corporation, association, or person, whom the defendant represents, to an amount not exceeding the surplus of the sum specified in the undertaking; and those damages may be recovered in a separate action brought as prescribed in the next section."

When the injunction was originally issued none of the representative relationships enumerated in section 895 existed between the bank and the trust company with respect to the property covered thereby, and at that time the trust company was not in any way affected by the injunction. The interest of the bank and that of the trust company were successive, neither interest existing at the same time.

In *Andrews* v. *Glenville Woolen Co.* (50 N. Y. 282) it was said by Judge RAPALLO (at p. 285): " It seems to me more reasonable to hold that when proceedings, conducted by one party for his own benefit in the name of another, are restrained by an injunction not directed to the party in interest by his name, the damages and expenses incurred by him in procuring the discharge of the injunction should be presumed in law to have been incurred by the defendant on the record, and should be recoverable in his name for the benefit of the real party in interest."

In that case it appears that the order of injunction restrained the Glenville Woolen Company, its attorneys, etc., and all persons acting or pretending to act in its name or on its behalf, from taking any steps or proceedings to compel the payment of certain judgments which had been recovered in the name of that company against Ripley & Cameron, from which judgments appeals were pending. These judgments had been recovered in the name of the company by persons who claimed to be attaching creditors of the company (a foreign corporation), and who also claimed the right to conduct the actions through their own attorney and to use the name of the company therein, pursuant to the provisions of sections 232 and 238 of the Code. On its facts it is readily distinguishable from the situation before us where the trust company, a stranger to the litigation at the time the injunction was issued, bought into the law suit thereafter. Furthermore, the *Andrews*

case was decided in 1872, prior to the enactment of section 624 of the Code of Civil Procedure which later became section 895 of the Civil Practice Act.

Somewhat analogous provisions of a bond in replevin were considered in *First Commercial Bank* v. *Valentine* (155 App. Div. 91; affd., 209 N. Y. 145). There, in an action by Welch Motor Car Company against P. Brady & Sons Company, the sheriff replevied two automobiles and a bond was given for the return of the automobiles to defendant in the event it was successful in the litigation. First Commercial Bank was allowed to intervene as a party defendant in the action of the motor car company against Brady and judgment was rendered in favor of the bank, adjudging that it was entitled to the possession of the automobiles and awarding damages for the conversion. The bank sued on the replevin bond, but demurrer was upheld on the ground that, although possession of the chattels was awarded to the bank, the bond did not inure to the benefit of the bank. In disposing of the argument that the undertaking takes the place of the property and that, therefore, it should inure to the benefit of whoever may be adjudged to be entitled to the property, the Court of Appeals, by Chief Judge CULLEN, said, in part: " This argument would be very forcible if the writ justified the officer in taking the specific chattels named in it wherever he might find them regardless of the person in whose possession they might be. Such was supposed to be the effect of the mandate in a replevin suit at common law, but the Code of Procedure and Code of Civil Procedure eliminated the doubt previously existing on the subject by restricting the authority of the officer to taking the chattels mentioned in the writ only from the possession of the defendant in the action. (*Manning, Bowman & Co.* v. *Keenan*, 73 N. Y. 45.) As it is only the possession of the defendant in the action that is invaded by the writ, the obligation of the undertaking is to him alone, subject to the qualification hereafter stated."

After a discussion of some of the rights of third parties to property taken in replevin, it was said: " If there were privity of title or possession between the original defendant in the replevin action and the present plaintiff, a very different question would arise. Either a bailor or bailee of property may maintain an action against a trespasser for its conversion, though but one action can be maintained, and a recovery by one party is a bar to an action by the other. (Black on Judgments, sec. 581; Story on Bailments, sec. 94; *Smith* v. *James*, 7 Cow. 328; *Green* v. *Clarke*, 12 N. Y. 343.) If that relation existed between the Brady Company and the plaintiff, and the Brady Company had succeeded in the replevin action by virtue of the present plaintiff's title, the Brady Company would

have been entitled to recover on the replevin bond the full value of the property and the damages, and such recovery, less any charges thereon, would be the property of its bailor. I cannot see that the bailor's rights would be any less because it was made a co-defendant in a replevin suit with his bailee. But, as before said, the complaint is barren of any allegation of such relation between the co-defendants in that suit."

Acting on the suggestion of the Court of Appeals, the bank then amended its complaint to allege that at the time the automobiles were replevied the bank and Brady occupied the relationship of bailor and bailee. In sustaining the complaint as amended, this court (163 App. Div. 709, at p. 713) said, in part: " As stated in the opinion of the Court of Appeals on the former appeal, if the plaintiff in the replevin action, instead of replevying the chattels, had taken possession thereof and removed them, it would have been liable in conversion either at the suit of the bailor or of the bailee. It is quite evident, I think, that Chief Judge CULLEN in his discussion regarded the liability on the undertaking as a substitute for the cause of action that would exist for the conversion of the property if it had been removed without lawful process. It is manifest from his discussion of the questions that any recovery at the instance of the bailee would have been for the benefit of the bailor, and it seems to me that it follows that, since the bailor is the real party in interest, it is entitled to maintain the action on the undertaking."

We read the opinions in the *First Commercial Bank* case *(supra)* as recognition of the necessity for the existence of the relationship enumerated in section 895 at the time the undertaking is given, as distinguished from rights acquired by subsequent transfer.

There are, of course, some bonds or undertakings which constitute a security fund for the property itself and pass with it as an appurtenance of any transfer. Appeal bonds or bonds which guarantee payment of a judgment (customarily given as a condition for opening a default) are of that character. The obligation under an injunction bond, however, is for the benefit of the party enjoined, and the limited represented class enumerated in section 895 of the Civil Practice Act.

A distinction is made with reference to the second undertaking given at the time the appeal was taken. It is urged that at that time the trust company was the owner of the property and the real party in interest and, therefore, the bond must have been given for its protection. Both these parties could not be the real party in interest at the same time. After the transfer of the property to the trust company, the bank did not cease to exist; it retained

some assets and also retained control over this action as well as other litigation. The bank claimed and has been awarded damages occurring subsequent to the time the second undertaking was given, which eliminates the contention that the trust company was the real party in interest.

Nothing in the language of section 895 of the Civil Practice Act justifies a construction that it was intended to include a vendee who purchased the subject-matter of the injunction after the injunction was issued. The respondent Manufacturers Trust Company, therefore, may not hold the surety for any damage it may have sustained after it acquired the Edgewater property. It is unnecessary for the court to consider the question of the proper rule of damages applicable.

The order so far as appealed from should be reversed, with twenty dollars costs and disbursements, and the motion to confirm the report of the referee, in so far as it relates to damage sustained by the Manufacturers Trust Company, denied.

TOWNLEY and COHN, JJ., concur; O'MALLEY and DORE, JJ., dissent and vote to affirm.

DORE, J. (dissenting). I agree with the construction the majority places on the language of section 895 of the Civil Practice Act, that it was not intended to include a vendee or transferee of the subject-matter of the injunction after the injunction was issued. I think, however, that it does not follow that Manufacturers Trust Company may not hold the surety for damage sustained after it acquired the property affected by the injunction. The obligations of the surety company are defined by the terms and the legal effect of its engagement in the light of the nature of the contract, the purposes to be accomplished by it, and the character of the proceedings of which it forms a part, including all applicable statutory provisions. The condition of the injunction undertaking in question, as provided in section 893 of the Civil Practice Act, was " * * * *that the plaintiff will pay to the party enjoined,* such damages, not exceeding a sum, specified in the undertaking, as he may sustain by reason of the injunction, if the court finally decides that the plaintiff was not entitled thereto." (Italics mine.)

While section 895 is not controlling, that section is not a limitation but an enlargement of the coverage of the undertaking referred to in section 893. While section 895 does not include, it has never been construed to exclude vendees or transferees *pendente lite* of the subject-matter of the injunction.

The original party to an action has the legal right to transfer his interest *pendente lite*. Such right is expressly recognized by section

83 of the Civil Practice Act which provides that in case of a transfer of interest the action may be continued by or against the original party "unless the court directs" that the transferee be substituted. Article 17 of the Civil Practice Act relates to the provisions for security. Section 148 of that article refers to the effect of change of parties and expressly provides: "A bond or undertaking given in an action or special proceeding continues in force after a change of parties; and has thereafter the same force and effect as if then given anew in conformity to the change of parties."

The basic contention of the surety company, if sustained, would prevent a defendant, restrained from the use of his property by an injunction improperly granted, from making any transfer of it *pendente lite* without the risk of relieving the surety of all liability, no matter how great the damages might be directly resulting from the continuance of the injunction. No recovery, it is said, can be had of the surety company for such conceded loss. If that be the construction to be put upon such injunction bonds, a premium is placed upon procrastination. Defendants with limited financial resources would doubtless in many cases be forced to relinquish their rights. Unless constrained by statute or controlling authority, such result should not be reached. I think neither statute nor controlling authority compels that result.

The injunction undertakings herein indemnified "the party enjoined" under section 893 of the Civil Practice Act. The law permitted the Gotham Bank, the original defendant, to transfer the subject-matter of the injunction *pendente lite* and to continue the action without substitution of the transferee as a party to the action (Civ. Prac. Act, § 83) or with such substitution (Civ. Prac. Act, § 148). The statutory language of section 893 that the plaintiff will pay " to the party enjoined," properly construed, embraces valid vendees and transferees *pendente lite* of the subject-matter of the injunction. It must be too clear for argument that, when they have knowledge of the injunction, they too are bound by the terms of the order to hold the property in *statu quo* so far as plaintiff's rights are concerned. The statute does not limit the undertaking to the named party nor exclude its successor in interest who becomes such by proper form of conveyance, transfer or sale. Had it done so it would have put a new and unreasonable restraint on alienation of property rights and interests.

Section 896 of the Civil Practice Act, providing for the action that may be taken on the undertaking after damages have been ascertained, expressly permits such action to be brought by " any person entitled to the benefit of an undertaking given to obtain an injunction order."

Sections 2 and 3 of the Civil Practice Act provide that the act shall be liberally construed, and the common-law rule that a statute in derogation of the common law is strictly construed does not apply to that act.

Injunction insurance is not like fidelity, fire, theft or any other similar type of personal insurance. In an undertaking with regard to an injunction such as the one in issue on this appeal, the person or character of the obligee in no way substantially affects the surety's risk. Such undertaking is the price plaintiff must pay for enforced passivity, if the court finally decides that he never was entitled to compel such inaction. Defendant and all persons claiming under defendant who have knowledge of the injunction are bound by it. Manufacturers Trust Company had knowledge of the injunction, was bound by it, and observed it to its damage for six years, and should have the benefit of the undertaking.

*Andrews* v. *Glenville Woolen Co.* (50 N. Y. 282) did not construe section 895 of the Civil Practice Act, and authorized a liberal construction as to liability on an injunction undertaking. I think, too, that *First Commercial Bank* v. *Valentine* (209 N. Y. 145) is not controlling. That was a replevin action. The statutory provisions for replevin bonds are radically different from the statutory provisions relating to injunction bonds. In that case the court had no occasion to consider or construe section 895 of the Civil Practice Act nor to decide that subsequent transferees *pendente lite* of a " party enjoined " could not recover on an injunction undertaking for conceded resulting damages sustained by such transferee from continuance of an injunction. In a replevin action the undertaking, as prescribed by statute, runs solely to the *named* defendant as obligee, since it is only the possession of that named defendant that is invaded by the writ. In the *First Commercial Bank* case the court merely held that on an undertaking in an action of replevin the surety is only liable to the defendant before the court when the undertaking was given, since the obligation of such undertaking in replevin is to a named defendant alone unless there is privity of title or possession.

The Gotham National Bank had a perfect legal right to transfer its assets to Manufacturers Trust Company on May 29, 1925, provided it did so without intent to breach the injunction and without disturbing the *status quo* as to plaintiff's rights. On April 14, 1925, an agreement was made between Gotham Bank and Manufacturers Trust Company which provided for the liquidation of the bank, the transfer of all its assets to the trust company, and the assumption by the trust company of all liabilities and obligations of the bank. Pursuant thereto on May 29, 1925, a bill of sale was

executed and delivered by the bank to the trust company conveying all assets of every kind and description, including its good will and all the choses in action, contracts of insurance of all kinds, *contracts of suretyship* and other contracts, and any and all rights of action accrued or to accrue thereunder. (Italics mine.) The only exception from the generality of this transfer was the consideration paid therefor by the trust company, namely, 7,500 shares of the trust company's stock.

The majority opinion states that the Edgewater property was shown on the bank examiner's report, " which was the basis for the transfer," and then says, " No mention was made of the injunction bonds as assets." But the bank examiner's report thus referred to is dated January 2, 1925. Accordingly it could not have included any reference to the first injunction undertaking here involved, since that is dated January 26, 1925, and was not in existence on January 2, 1925. Reference to an outstanding injunction in the examiner's report necessarily, therefore, related solely to the preliminary injunction undertaking of $1,000 dated December 6, 1924, given by the National Surety Company, not by the appellant, Massachusetts Bonding and Insurance Company. That preliminary stay is not here involved at all.

The first injunction undertaking given by the appellant and involved in this appeal is dated January 26, 1925, and necessarily was transferred in the transfer of assets from the Gotham Bank to Manufacturers Trust Company on May 29, 1925, because it was not specifically excluded from the sweeping description of the assets that were transferred, including " contracts of suretyship."

By force of the liquidation of the Gotham Bank and the bill of sale transferring all its assets, dated May 29, 1925, the trust company became the owner of the Hudson River Dock and Warehouse mortgage on the Edgewater property and of any and all rights under the injunction undertaking of January 26, 1925, given as an indemnity to compensate for damage suffered by the continuing restraint upon the enforcement of the mortgage in the pending foreclosure proceedings. By a modification letter dated the same date as was the bill of sale, namely, May 29, 1925, and accompanying the bill of sale, it was agreed between the bank and the trust company that, as to this pending Edgewater property mortgage litigation, the bank would assume defense of the suit through its own attorneys, but that all other obligations thereunder would be borne by the trust company.

On May 29, 1925, the trust company took the assets " as is; " that is, with knowledge of the injunction and subject to the existing state of facts, and necessarily became equally bound with the bank

to observe and obey the provisions of the outstanding injunction order; and if such injunction order was finally upheld, the trust company would itself have to bear and suffer any resulting loss or damage. Correspondingly the trust company became entitled to the unexcepted benefits and indemnities that were to accrue in the event of final dissolution of the injunction. By the mandate of the court, the trust company after its acquisition of the assets of the Gotham Bank was obliged to and did suspend all pending litigation with respect to the foreclosure of the Edgewater property from May 29, 1925, until June, 1931, during which period the injunction remained in force — a period of over six years — with resulting damage to its beneficial use thereof for which claim is now made.

The record establishes that the second injunction undertaking here involved, dated December 26, 1929, was concededly given with full knowledge of the fact that the trust company was the owner of the property and the real party affected. Therefore, if that bond was not given for its protection, it was substantially a nullity. Clearly the surety company should not be permitted to escape liability; on that bond the trust company was covered under section 895 of the Civil Practice Act.

The defense of the suit pursuant to the special agreement between the bank and the trust company was properly continued in the name of the bank under section 83 of the Civil Practice Act. The only award to the bank for damages subsequent to December 26, 1929, was not for property damage but solely for expenses and counsel fees in connection with the subsequent litigation. It is said that both parties could not be the real party in interest at the same time. But a reading of the agreement of transfer shows that the trust company was the real party in interest, the one to suffer the real and substantial property damages if the injunction was finally sustained. The bank merely had the obligation of paying counsel fees while it continued the litigation as nominal party. The surety company is in no way aggrieved or prejudiced because damages for deprivation of the beneficial use of property were awarded directly to the trust company. Such damages could have been awarded to the bank as the nominal party to the action for the benefit of the real party in interest (*Andrews* v. *Glenville Woolen Co.*, 50 N. Y. 282), and thereafter paid over by the bank to the trust company. Doubtless if that procedure had been followed, the surety company would now be insisting that the bank was not the real party in interest and thereby would attempt to escape from liability by another route.

The record shows that both experts testified that in 1925 the property was worth $350 a front foot, or a total of $164,500. The surety company's expert testified that same value continued to December 10, 1929, December 11, 1930, and down to June 25, 1931, so that on his testimony there was no decrease in the value of the land between January 26, 1925, and June 25, 1931, when the injunction was finally dissolved. The injunction prevented the trust company from enforcing its rights under the judgment of foreclosure and sale. That judgment carried with it the right to receive interest on the sum of $163,215 from April 29, 1924. Such interest would not have accrued had there been no injunction preventing the immediate disposal of the property. Accordingly the injunction caused the loss of interest and taxes. It was conceded that $63,389.55 constituted interest on the mortgage indebtedness. That item alone is in excess of the remaining available balance under the undertaking without considering any other items of claimed damages.

That the referee and the Special Term proceeded on an erroneous construction of section 895 of the Civil Practice Act is immaterial on this appeal. A correct disposition will be affirmed even though based on wrong reasons. (*Kelley* v. *Osborn*, 172 App. Div. 6.)

The order appealed from should be affirmed.

O'MALLEY, J., concurs.

Order, so far as appealed from, reversed, with twenty dollars costs and disbursements, the motion to confirm the report of the referee, in so far as it relates to damage sustained by the Manufacturers Trust Company, denied. Settle order on notice.