## SUPREME COURT.

'THE SECOND NATIONAL BANK OF OSWEGO agt. JOHN DUNN.

*Sheriff — When not to be held guilty of contempt — Not to be so held because he does not correctly decide difficult questions of law — Law of replevin — Code of Civil Procedure, sections 14, 1709, 1690, 1712, 1419, 1700.*

Misbehavior in office, willful neglect of duty and disobedience to a lawful mandate of the court, all imply bad faith and not a simple mistake or error of judgment. If a party to an action is injured by a mistake of the sheriff in the discharge of an official duty, he can hold him and his sureties liable in damages, but cannot proceed against him as for a contempt. He should not be fined and imprisoned because he did not correctly decide difficult and important questions of law, in relation to which learned counsel differ, and over which the court may well hesitate.

On January 7, 1882, the defendant made a general assignment for the benefit of his creditors to one D., his bookkeeper, who at once took possession of the assigned property, consisting in part of a malt house, containing about 18,000 bushels of malt. On the ninth instant, replevin process in favor of the First National Bank against said defendant and D. was placed in the sheriff's hands, requiring him to replevy 10,000 bushels of said malt. The sheriff seized the malt, and after keeping it in his possession for the time and in the manner required by law, on the thirteenth instant went to the president of the First National Bank and told him that he had come to deliver the malt called for in the requisition of replevin, and that he did deliver it. The president accepted such delivery, but wished the sheriff to separate the 10,000 bushels, and deliver it at a designated place. On the thirteenth instant the defendant gave plaintiff a note for a debt which had existed for more than a month, by its terms due at once, and on the same day, having been sued thereon, served an offer to compromise under the Code, upon which, at half-past five P. M., judgment was rendered

Secon✝ National Bank of Oswego agt. Dunn.

against him for $15,415.23. On the fourteenth instant an execution was issued to the sheriff, who, at the request of the plaintiff, at once levied on the malt in question and other property. On the sixteenth the plaintiff served a notice on the sheriff, that, by virtue of its judgment, execution and levy, it claimed title and right to possession of all the malt. On the seventeenth, the First National Bank indemnified the sheriff against such claim, pursuant to section 1709 of the Code. The plaintiff also indemnified the sheriff.

*Held*, that it was the duty of the sheriff to separate and deliver to the First National Bank the 10,000 bushels of malt called for by its requisition; that the Second National Bank has no lien on that malt, as it is in the custody of the law, and hence not liable to seizure under execution; that, pending the action in replevin, the undertaking given in that suit for the return of the malt or payment of its value, together with the right to a judgment for its return or value in case of a successful defense, takes the place of the malt itself, so far as either may become the subject of attack by the judgment creditors of defendant.

*Oswego Special Term, February* 1882.

MOTION to punish the sheriff of Oswego county for an alleged contempt in neglecting to execute the process of the court, issued in this action in favor of the plaintiff.

*S. M. Coon, Geo. G. French, S. C. Huntington*, and *Isaac D. Garfield*, for motion.

*N. W. Nutting*, for sheriff.

*Rhodes & Richardson*, for the First National Bank.

VANN, J. — This unusual proceeding is based upon section 14 of the Code of Civil Procedure, which provides that a court of record has power to punish, by fine and imprisonment, or either, a neglect or violation of duty, or other misconduct, by which a right or remedy of a party to a civil action or special proceeding, pending in a court, may be defeated, impaired, impeded or prejudiced in either of certain enumerated cases, and among them that of a sheriff for misbehavior in his office or trust, willful neglect or violation of duty therein, or disobedience to a lawful mandate of the court.

. It is claimed by the plaintiff that the sheriff has rendered himself liable to punishment under these provisions, by what he has done or failed to do, with an execution in its favor issued against the property of the defendant on the 14th of January, 1882. It appears that on the 7th of January, 1882, the defendant Mr. Dunn made a general assignment for the benefit of his. creditors to John Dorsey, Jr., his bookkeeper and clerk, who at once took possession of the assigned property, and among the rest of a malt house in Oswego, containing a quantity of malt in bulk, supposed to be about 18,000 bushels. Two days later, on the ninth, replevin process in favor of the First National Bank against said Dunn and Dorsey, was placed in the sheriff's hands requiring him to replevy 10,000 bushels of said malt. The sheriff seized the malt under this process, and after keeping it in his possession for the time and in the manner required by law, on the thirteenth went to the president of the First National Bank, at its banking rooms, and told him that he had come to deliver the malt · called for by the requisition in replevin, and that he did deliver it. The president accepted such ·delivery, but told the sheriff that he should like' to have him separate the 10,000 bushels and deliver it at a designated place. All this occurred prior to the recovery of the judgment in this action, and prior even to the giving of the note on which such judgment was rendered, although the debt for which the note was given had existed for more than a month. On the thirteenth Mr. Dunn gave plaintiff a note, by its terms due at once, and on the same day, having been sued . thereon, served an offer to compromise under the Code, upon which at half-past five P. M. judgment was rendered against him for $15,415.23, besides costs. An execution was forthwith issued on this judgment to the coroner, but it was soon withdrawn, and on the fourteenth one was issued to the sheriff who, at the request of the plaintiff, at once levied on the malt in question and other property. On the sixteenth the plaintiff served a notice on the sheriff that by virtue of its judgment, execu-

tion and levy, it claimed title and right to possession of all the malt. On the seventeenth the First National Bank indemnified the sheriff against such claim pursuant to section 1709 of the Code. In the meantime the sheriff, who had been notified by Mr. Dorsey to remove the malt as he wanted the room, had commenced moving the same to the malt-house of Lyon & Mott, distant about 100 rods; and on the seventeenth, when the stay of proceedings was granted herein on the motion of the plaintiff, about 5,500 bushels had been removed. A deputy was placed in charge of the malt as fast as it was stored, and no part has yet left the possession of the sheriff. The plaintiff also indemnified the sheriff, but he claims that the penalty of the bond is not large enough, and that one of the sureties, being an attorney, is disqualified under Rule 5 of this court.

Thus the sheriff found himself in the possession of two mandates of the court, apparently, but not really, in conflict.

By the mandate in replevin he was commanded, after the expiration of three days and the failure of the defendants therein to except to the sureties or reclaim the chattels, having been indemnified against the claim of title made by the Second National Bank, to deliver the malt to the First National Bank (*Code of C. P., secs.* 1690 *to* 1712).

By the mandate in the form of an execution he was commanded, having been indemnified by the Second National Bank against any claim of title or right to possession by a third party, to detain the malt as belonging to the judgment debtor and sell it in satisfaction of plaintiff's judgment (*Code, sec.* 1419).

For any failure to act strictly according to law he and his official sureties are liable in damages to the party injured, and in addition to that liability, it is now sought to punish him for contempt because it is claimed that he did not correctly decide certain grave questions of law that counsel have argued so elaborately and in relation to which they differ so widely.

I. It is provided by section 1709 of the Code that at any time before a chattel, which has been replevied, is *actually delivered* to either party, a third person may present his claim to possession, provided such claim was in existence at the time when the chattel was replevied.

This means a completed delivery, so that nothing further remains to be done. What transpired at the interview between the sheriff and the president of the First National Bank, on the thirteenth, did not constitute such a delivery, as the malt was in bulk, and the 10,000 bushels was not separated from the mass. It was a formal, but not that manual or physical delivery contemplated by the statute. Hence the notice of claim served on the sixteenth by the Second National Bank, by virtue of its execution and levy, was in time.

II. The plaintiffs claim, however, although presented before the actual delivery of the malt to the First National Bank, was not in existence at the time when the malt was replevied. This claim is not by virtue, simply, of the debt of the Second National Bank against John Dunn, which constituted no lien and gave no right of possession, but by virtue of the judgment rendered on that debt, the execution issued on the judgment and the levy made under the execution, which ordinarily would constitute a lien and give a right to possession. The claim must exist at the time the property is replevied (*Sec.* 1709). The property is replevied by the sheriff's taking it into his possession (*Sec.* 1700). But when the sheriff took this malt into his possession the Second National Bank had no lien, and nothing under which it could claim a lien. It had no judgment. It had not commenced an action. Even the note on which it afterwards recovered judgment was not in existence.

III. It was the duty of the sheriff, under the mandate in replevin, to deliver the malt to the First National Bank after the expiration of the time provided by law. Was that duty liable to be suspended by the intervention of the right of a third party, even if its claim or lien was not in existence at

the time the property was replevied, so as to be asserted under section 1709 ? If, for instance, an execution against the First National Bank had been issued to the sheriff before actual delivery of the malt by him, would it have suspended his obligation to deliver to the bank until he had satisfied the execution against it ? Did the issuing of the execution in this action, in favor of the Second National Bank, against the property of John Dunn, with tender of indemnity under section 1419, suspend the obligation of the sheriff to deliver the malt to the First National Bank until that execution should be satisfied ?

All claims to the right of present or temporary possession as against Dunn, in existence at the date of the replevy, are concluded by the replevin proceedings until judgment in the action awarding final possession. But as the claim of the plaintiff did not exist as a lien, at that time, is it concluded by those proceedings during the pendency of the replevin suit ?

Mr. Wells, in his recent treatise on the Law of Replevin, lays down the rule that when an officer has taken property by virtue of a writ of replevin, for the purpose of delivering it in obedience to the mandate, he is regarded as holding it in the custody of the law; that while acting in obedience to that command the law will not permit any other party to interfere and prevent him from doing what the writ commands him to do ; that the proceeding is so far *in rem*, that the goods cannot be seized upon any process until the court shall have taken action ; that if a party finds his goods in the hands of an officer upon a valid writ of replevin, and that they have been taken from the possession of the defendant named in the writ, his remedy is by an application to the court to be permitted to come in and set up his claim to them, and not by an independent proceeding ( *Wells on Replevin, secs.* 256, 257). The rule is otherwise where the sheriff has taken the property from the possession of a party not named in the writ, as in such case he has not acted according to, but rather

in defiance of, the command of the writ (*Wait's Practice* [*vol.* 1], *p.* 716). Under the late Code of Procedure, the only way that a third party could assert his claim to goods taken by the sheriff in replevin, was by serving on the sheriff an affidavit of title and right to possession (*Code of Procedure, sec.* 216 ; *Edgerton* agt. *Ross*, 6 *Abb.*, 189). Under that Code the claim . was not limited to one existing at the time of the replevy,

In *Hogan* agt. *Lucas* (10 *Peters* [*U. S.*], 400) it was held that when the property taken in replevin is placed in the possession of the claimant his custody is the custody of the sheriff, and the property is not withdrawn from the custody of the law but is as far from the reach of other process as it would have been in the hands of the officer. That although the property had been delivered to the claimant it was constructively in the custody of the state court so as to prevent a marshal of the United States from levying upon it.

In *Acker* agt. *White* (25 *Wend.*, 614) it was held that property seized under an execution and then delivered upon a writ of replevin to a third person cannot afterward be levied upon under another execution against the defendant in the first execution, although the property be permitted to continue in his possession ; that the replevin bond was substituted for the goods and was regarded as an equivalent security to the extent of the value of the goods ; that the goods, although in the actual custody of the plaintiff in replevin, were constructively in the custody of the late sheriff who had taken them on the replevin process and were not liable to seizure upon an execution in the hands of the acting sheriff. This case was carefully analyzed and commented on by the court of appeals in *Burkle* agt. *Luce* (1 *Com.*, 163, 168).

In *Manning* agt. *Keenan* (73 *N. Y.*, 45), where coroners had seized goods under replevin process, and on being served with notice of claim by a third party had been indemnified by the plaintiff in replevin and had delivered the goods to him, it was held that they were bound to make such delivery but

were liable in an action for conversion, brought by the third party, upon the theory that the bond of indemnity was intended to protect the coroners against such a liability; that is, the goods being in the custody of the law the bond to the coroners took their place (*See, also, Lockwood* agt. *Perry,* 9 *Metc.,* 440; *Milliken* agt. *Edge,* 6 *Hill,* 623; *Morris* agt. *De Witt,* 5 *Wend.,* 71; *Sanborn* agt. *Leavitt,* 43 *N. H.,* 473; *Lowry* agt. *Hall,* 2 *W. & S.* [*Pa.*], 131; *Maloney* agt. *Griffin,* 15 *Ind.,* 214; *Willard* agt. *Kimball,* 10 *Allen,* 211; *Wells on Replevin, secs.* 472–480).

My conclusion is that it was the duty of the sheriff to separate and deliver to the First National Bank the 10,000 bushels of malt called for by its requisition; that the Second National Bank has no lien on that malt as it is in the custody of the law, and hence not liable to seizure under execution; that pending the action in replevin the undertaking given in that suit for the return of the malt or payment of its value, together with the right to a judgment for its return or value in case of a successful defense, takes the place of the malt itself so far as either may become the subject of attack by the judgment creditors of Mr. Dunn.

IV. It is urged that the receipt under which the First National Bank is said to claim the malt, is not a warehouse receipt, but a pledge or an unrecorded chattel mortgage or bill of sale, and hence ineffectual as against judgment creditors. However that may be, it can only be determined when the replevin action is tried. Whether the sheriff was or was not informed of the facts showing title or the want of title in the First National Bank is wholly immaterial. The requisition was both the foundation and boundary of his duty and power. If valid on its face he was bound to execute it, and he had no right to look beyond it or behind it. It was the command of the court, and whether right or wrong he was required to obey it, and protected if he obeyed it.

V. Whether the foregoing conclusions as to the rights of the various parties are correct or not, it is clear that the

sheriff should not be held guilty of any contempt.   He has acted in good faith and this excludes his case from the section under which this motion is made.

Misbehavior in office, willful neglect of duty and disobedience to a lawful mandate of the court, all imply bad faith, and not a simple mistake or error of judgment.   If a party to an action is injured by a mistake of the sheriff in the discharge of an official duty, he can hold him and his sureties liable in damages, but cannot proceed against him as for a contempt.   An inexperienced officer, before he has been in office a month, should not be fined or imprisoned because he did not correctly decide difficult and important questions of law, in relation to which learned counsel differ, and over which the court may well hesitate.

The motion is denied, with ten dollars costs, and the stay of proceedings is vacated.